L. L. HIGGINS v. SELIM RINKER.

ON REHEARING.

1. CONSTITUTIONAL LAW.—The Constitution of Texas of 1869, provided that * * *  "the Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade, or profession : *Provided*, That the term occupation shall not be construed to apply to pursuits, either agricultural or mechanical."  (Sec. 19. art. 12 :) *Held*—

That the language used conferred the power to tax all occupations except mechanical or agricultural, and he who engages in either of said departments of industry, has that for an occupation in fact, notwithstanding the mode of expression adopted in the Constitution.

2. CONSTITUTIONAL LAW—TAXATION—CONSTRUCTION OF STATUTES.—Under the Constitution of 1869, the general law of 1873 was

passed, to regulate taxation, which, among other things, provided
"that there shall be levied on and collected from any person, firm,
or corporation pursuing any of the following-named occupations, an
annual tax, except when herein otherwise provided, on every such
occupation or separate establishment, as follows: 'For selling
spirituous, vinous, malt, and other intoxicating liquors, in quantities
less than one quart, $200: *Provided*, That this section shall not be
so construed as to include any wines or beer manufactured in this
State, or when sold by druggists for medicinal purposes: *And pro-
vided further*, That this section shall not be so construed as to
authorize druggists to sell spirituous or intoxicating liquors, except
alcohol.'" Appellants procured an injunction to restrain the col-
lection of an occupation tax levied upon them for selling spirituous,
vinous, malt, and other intoxicating liquors in quantities less than a
quart, alleging that the wines and malt liquors sold by them were
not of Texas manufacture. They relied on the fourth paragraph of
section 8, and the second paragraph of section 10, of the first article
of the Constitution of the United States: *Held*—

1. It is not to be inferred from the language used in the first
proviso of the act, that wines and beer manufactured in the State
do not fall under the denominations of vinous and malt liquors,
but rather that it was the legislative intention to exempt from the
payment of an occupation tax any person who might engage in
the occupation of selling them as a business, who, at the time,
was not also selling spirituous liquors, manufactured either in or
out of the State.

2. If a person sells wine and beer, or either, in an establishment
for the sale of spirituous liquors also, he cannot receive any ben-
efit from an exemption in favor of the former; to obtain that
benefit he must sell the wine and beer of domestic manufacture,
in a separate establishment. As a benefit was intended to be
conferred by the law, it follows, that two different establishments
were contemplated by the Legislature in passing it.

3. If one sells spirituous liquors, he must pay the occupation
tax, whether he sells wine and beer or not, and whether he sells
foreign or domestic wine or beer. If, however, he engages in the
occupation of selling only domestic wine and beer, or either, there
is no law of this State requiring him to pay an occupation tax.

4. One engaged in the occupation of selling only wine and beer
manufactured in another State, would, under the Constitution of
the United States, as construed by its Supreme Court, be relieved
from paying an occupation tax; but it does not therefore follow,
that one who is engaged in the occupation of selling spirituous
liquors also, is equally relieved, for the exemption of the State law
does not reach him. The occupation of selling spirituous liquors

is taxed, under all circumstances, whether anything else is sold in the establishment or not.

5. The free use of wines and beer imported from the States, in establishments fitted up for their sale, would but very little interfere with the principal objects of the law, either in the raising of revenue or the discouragement of their domestic manufacture, and would serve the evident purpose of the law, in encouraging the general use of wines and beer in preference to spirituous liquors.

6. A statute should be construed with reference to the habits of business prevalent among the people to whom it applies.

7. It is competent for the court in interpreting the meaning and objects of a law, to take into consideration the existing facts to which the law is intended to be applied, whether they consist of the ordinary acts of persons, or of the habits of business relating to the subject matter and embraced within the law.

8. If it should be held that the proviso exempting the sale of domestic wines and beer from taxation can be rejected, leaving the balance of the clause in force, two of the obvious objects of the law would be defeated, viz., the encouragement of the manufacture of wine and beer, and their use, in preference to spirituous liquors. If it should be held that one establishment was contemplated by the law embracing the sale of either spirituous liquors, or wine, or beer, or all together, then the main object of the law would be defeated by reason of it being in conflict with the Federal Constitution, and neither would revenue be collected or encouragement be given to the manufacture and use of wine and beer in preference to spirituous liquors. Such construction must therefore be given to it as will tend most to make it accomplish its different objects, and at the same time be most conformable to the different descriptions of business existing in the State, which the law was intended to regulate in its scheme of taxation.

9. The case of Welton *v.* The State of Missouri, (1 Otto, U. S. Rep., S. C. P., 275,) when considered with reference to the facts of that case, is not in conflict with this description. In that case, the Legislature enacted a fiction in defining a peddler, and founded a penal statute upon it.

APPEAL from Galveston.   Tried below before the Hon. W. H. Stewart.

ROBERTS, CHIEF JUSTICE.—The Constitution provides that "Taxation shall be equal and uniform throughout the State. All property in the State shall be taxed in proportion to its

value, to be ascertained as directed by law, except such property as two thirds of both houses of the Legislature may think proper to exempt from taxation. The Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade, or profession : *Provided*, That the term occupation shall not be construed to apply to pursuits, either agricultural or mechanical. (Sec. 19, art. 12, Const. of 1869.)

The Legislature is given power to tax all occupations, which includes the power to tax some of them only. The proviso presents a mode of expression designed to exempt from occupation-tax, agricultural and mechanical occupations; for they are occupations, in point of fact, which are pursued.

In pursuance of these provisions, the law of 1873 was passed, under which this suit originated, entitled "An act regulating taxation." (Gen. Laws, 1873, p. 198.)

It provides "that there shall be levied on and collected from any person, firm, or association of persons pursuing any of the following-named occupations, an annual tax (except when herein otherwise provided) on every such occupation, or separate establishment, as follows : For selling spirituous, vinous, malt, and other intoxicating liquors in quantities less than one quart, two hundred dollars; in quantities of a quart and less than ten gallons, one hundred dollars :. *Provided*, That this section shall not be so construed as to include any wines or beer manufactured in this State, or when sold by druggists for medicinal purposes: *And provided further*, That this section shall not be so construed as to authorize druggists to sell spirituous or intoxicating liquors except alcohol. For selling in quantities of ten gallons and over, one hundred dollars."

Here again the first proviso is a mere mode of expression, from which it is not to be inferred that wines and beer manufactured in this State do not fall under the denominations of vinous and malt liquors, but rather to exempt from payment of

an occupation tax any person who might engage in the occupation of selling them as a business, or have an establishment for that purpose, who at the same time was not also selling spirituous liquors, manufactured either in or out of the State. A person so engaged would in point of fact be pursuing an occupation other than agricultural or mechanical, and might, under the Constitution, be required to pay an occupation tax, as well as one who pursued the occupation of selling spirituous liquors also. If a person sells domestic wines and beer, or either, in an establishment for the sale of spirituous liquors also, he cannot by this law get any benefit from the exemption in their favor. To get that benefit, he must sell them in a separate establishment. And as a benefit was certainly intended to be conferred by the law, it necessarily follows that two different establishments were contemplated by the Legislature in passing the law.

The statute, therefore, notwithstanding its vague and indefinite expressions, evidently contemplates two distinct occupations to be pursued practically, or establishments to be kept under its provisions, to wit, one where the person engaged in it sells liquors, wines, and beer generally, and one where the person engaged in it sells wine and beer, or either. If the person sells spirituous liquors, he must pay the occupation tax, whether he sells wine and beer or not, and whether he sells foreign or domestic wine and beer. If, however, he engages in the occupation of selling domestic wine and beer, or either, there is no law of this State requiring him to pay an occupation tax. If another person should engage in selling wine and beer only, which are manufactured in other States of the Union, by the terms of the law he would have to pay an occupation tax, the same as though he sold spirituous liquors also. He could complain that the wine and beer sold him was taxed because it was imported from other States, by the operation of the law requiring him to pay an occupation tax. Under the Constitution of the United States, as construed in application to this subject by

the Supreme Court of the United States, he should be relieved from such a tax, because it operates a discrimination against wine and beer manufactured in other States. It does not follow from this, however, that one who is engaged in the occupation of selling spirituous liquors is equally relieved, for when so engaged the exemption of the State law does not reach him, and in that occupation there is no discrimination against any wines or beer. The discrimination can only exist when a different occupation than that of selling spirituous liquors is pursued, by confining it to the other occupapation contemplated in our statute of selling wines and beer alone.

The plaintiffs in this case are engaged in the occupation of selling spirituous liquors. That occupation is taxed by our law under all circumstances, whether anything else is sold or not in the establishment. A wine or beer shop, practically, is a different establishment, and must be, to get the exemption from tax under the statute of this State. When, upon that, an attempt is made to collect a tax under the head of occupation tax, because foreign wine or beer is sold in it, the question may then, and not before, arise which is presented in this case.

The law should be construed in reference to the habits of business prevalent in the country at the time it was enacted. The law was not made to create or shape the habits of business, but to regulate them, as then known to exist. The grocery, bar-room, saloon, or sample-room was an establishment kept principally for the sale of spirituous liquors, and was fitted up in a way usually not to be mistaken as to its leading object. The sale of wine or beer in it was merely incidental, for the accommodation of such as might happen to decline the use of ardent spirits. Indeed, it is well known to those who understood the subject from experience or observation, that spirituous liquors was the principal thing sold or drank in groceries, in most parts of the State, and that wines and beer were very little used formerly in the ordinary

groceries or bar-rooms, as they were called. And although the words "vinous and malt liquors" were used in the tax laws in connection with "spirituous liquors," it may have been to prevent evasions of the tax law, the main object of which has been to tax heavily the sale of spirituous liquors in common use in the country. In former times, and to some extent at present, there were establishments of much more humble pretensions, wherein spruce-beer, or cake and beer of some sort, were sold, all of home manufacture. This sort of an establishment was not classed with the other, and did not pay an occupation tax. Of late years, especially in localities where our German citizens have resided, lager beer has been manufactured and sold in establishments, either in connection with or apart from the brewery. They are fitted up, in reference to this business, with mugs, round tables, and the like, and are not readily to be mistaken for an establishment for the sale of spirituous liquors. To a limited extent, wines have also been made and sold in this State; and in our principal cities, signs may be seen, indicating the houses to be establishments for the sale of "wine and beer," but most commonly for the sale of "beer."

A drug store is an establishment where wines and alcohol have long been sold for medicinal purposes, and they do not pay an occupation tax, unless spirituous liquors are sold in them; nor can they be classed with establishments for the sale of spirituous liquors, either in their outfit, appearance, or use.

The law of 1873 was passed in reference to such a state of things. The policy is plainly indicated, that every establishment where spirituous liquors are sold shall pay an occupation tax, whether wines, beer, or medicines are sold there or not; that in a drug store, wines and alcohol may be sold for medicinal purposes, without the payment of an occupation tax, and that such establishments as are used to sell domestic wines and beer, or either, shall pay no occupation tax. The motive that prompted this exemption was, perhaps, in part,

from the fact that those who kept such establishments may have most usually manufactured the wine or the beer, especially the latter, which was sold in them, and partly, perhaps, both to encourage the manufacture and the use of them, rather than the use of ardent spirits. If a person should choose to have an establishment of this sort, for the sale of both foreign and domestic wines and beer, those imported from other States of the Union would be placed under the disadvantage of a discrimination, if he were required to pay an occupation tax, because he sold such foreign wines or beer in his establishment. Such an establishment, in which domestic wines and beer, or either, were sold, is expressly exempted from the payment of an occupation tax; and if in it wines or beer imported from other States of the Union were sold, it might be held that it also was exempt from an occupation tax under the Constitution of the United States. Under this construction, the leading object of the statute passed to raise a revenue would be carried out by imposing an occupation tax upon all establishments for the sale of spirituous liquors, even drug stores; and the establishments for the sale of wines or beer, or both, would be encouraged by being exempted, which encouragement was, in part certainly, the design of the Legislature. The free sale of wines and beer imported from other States, in establishments fitted up for that purpose, would but very little interfere with the principal objects of the law, either in reference to the raising of revenue or discouragement of their domestic manufacture, and would serve the evident purpose of the law in encouraging the general use of wines and beer, in preference to the use of spirituous liquors.

If it be held that the proviso exempting the sale of domestic wines and beer from taxation can be rejected, leaving the balance of the clause in force, two of the obvious objects of the law will be entirely defeated, to wit, the encouragement of the manufacture and the preferred use of wine and beer rather than spirituous liquors. If it be held that but one

establishment was contemplated by the law, embracing the sale of either spirituous liquors or wines or beer, or all together, then the main object of the law will be defeated, by its being contrary to the Constitution of the United States, and no revenue will be collected, and no encouragement will be given, either to the manufacture or the use of wines or beer, or both, in preference to the use of spirituous liquors. It is therefore concluded that such construction should be given to the law as would come nearest to making it accomplish its different objects, and, at the same time, be most conformable to the different sorts of business existing in the State, which the law was intended to regulate in its scheme of taxation.

"In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible effect to each." (Potter's Dwarris on Stats., 144.) "The presumption must always be in favor of the validity of laws, unless the contrary is clearly demonstrated." (Id., 145.) "It is the duty of courts to construe statutes to meet the mischief, and to advance the remedy, and not to violate fundamental principles." (Id., 144.)

It has ever been a fundamental principle in our legislation, to impose a heavy tax upon the sale of spirituous liquors, not only to raise a revenue, but to check the excessive use of it. "Contemporary practice is a circumstance which is connected with a law in time, and not only in time, but in place, too; for it consists in what was usually done in the place where the law was made, at or near the time of making it." (Id., 137.)

It is competent for the court, in interpreting the meaning and objects of a law, to find out and take into consideration the existing facts to which the law is intended to be applied, whether they consist of the ordinary acts of persons, or of the habits of business relating to the subject-matter embraced within the law. (Stearnes *v.* The State, 21 Tex., 705.) "That

which is implied in a statute is as much a part of it as what is expressed." (Potter's Dwarris on Stats., 145.)

The fact that in the section of the law, in imposing an occupation tax, it is said "that this section shall not be so construed as to include any wines or beer manufactured in this State," raises a necessary implication that there were establishments kept for the sale of wine or beer, or both, in which spirituous liquors were not sold, and which were intended to be provided for in the way of an exemption from occupation tax; and such implication is correspondent to existing facts, that must have been known to the legislators when the law was enacted by them. If they had contemplated but one establishment in this section, then there could not possibly have been any exemption from the occupation tax in the sale of domestic wines and beer, as expressly provided for by the act.

The case of Welton v. The State of Missouri, 1 Otto, U. S. Rep., 275, is relied on as authority to maintain the proposition, that this section of the tax law is contrary to the Constitution of the United States, and, therefore, void and inoperative for all purposes. It may be authority to establish that the section is inoperative, in so far as it makes a discrimination against wines and beer imported from other States and sold in establishments in which wine and beer, or either of them, are alone sold, but not as to the occupation of selling spirituous liquors, which is made to pay a tax, whether anything else is sold with it or not. That decision was made under the statute of Missouri, as follows, to wit: "Whoever shall deal in the selling of patent or other medicines, goods, wares, or merchandise, except books, charts, maps, and stationery, which are not the growth, produce, or manufacture of this State, by going from place to place to sell the same, is declared to be a peddler." Other sections of the same law prohibit a person from selling, as a peddler, without license, and prescribe the rate of charge for license. In this the Legislature enacted a fiction, and founded a penal statute upon it.

A peddler is a person who is a foot-trader, according to

the original signification of the appellation, but, by custom, it has come to be a person who travels from place to place, and carries about with him, on his back, or on horseback, or in a vehicle of some kind, articles of merchandise for sale where he goes. Such a person is a peddler in fact, and the law which declared, that to be a peddler, he must sell only articles manufactured out of the State, did not and could not make one who, under similar circumstances, traveled about and sold articles manufactured within the State, other than a peddler in fact, although the Legislature might choose not to embrace him in the legal definition of a peddler, for the purposes of taxation. The Legislature must have contemplated that there were or would be such persons traveling from place to place, and selling articles of merchandise manufactured within the State; otherwise they could confer no benefit or advantage upon any one, by leaving out of the legal definition of a peddler those who might be peddlers in fact and not in law.

The real object of the law was to raise a revenue by a tax upon peddlers, and it was so shaped as to impose the whole burden of the tax upon those peddlers who sold articles of merchandise manufactured out of the State, the necessary operation of which was to impose a tax upon the foreign articles so sold, to the advantage of similar articles manufactured within the State. The occupation of the peddlers was the same, whether they sold domestic or foreign-manufactured articles of merchandise. The law does not make an occupation; that is made by the people in their pursuits, habits, and modes of business. It cannot make one not a peddler who is so from pursuits and occupation, although for a purpose relating to taxation, it may give a restricted and inaccurate definition of what it takes to constitute a peddler. It is obvious that the object and operation of this law were to make a discrimination against foreign and in favor of domestic articles of merchandise, when sold by peddlers. By this law, persons were encouraged to engage

in the occupation of peddling in the sale of domestic manufactures, which business, we may reasonably presume, persons were engaged in at the time, just as by our law persons were encouraged to engage in the occupation of selling home-made beer or wine, or both, in establishments in which spirituous liquors were not sold, as they existed at the time the law was passed, and before and since that time, and which have an outfit of furniture and other appliances, and are attended with habits and associations of persons entirely different from those establishments styled, sometimes, groceries, saloons, bar-rooms, or sample-rooms, whose principal object is, and always in this country has been, the sale of spirituous liquors, in which, the occupation tax being paid, any other beverage may be sold, whether manufactured at home or abroad.

This case having been reversed and remanded at the late term of this court, at Galveston, a motion for a rehearing was made by appellee. Thereupon the case, with the motion, was taken under advisement, and the judgment of this court suspended for the further order of the court, and the case, with the motion, transferred to Austin.

It is ordered that the motion for rehearing be granted, and that the judgment of reversal, heretofore rendered and suspended, be set aside; that the judgment of the District Court herein be affirmed; that judgment accordingly be here rendered, and be transmitted, with the papers of the cause, to the court at Galveston, to be there entered as of the late term of said court.

AFFIRMED.

[Associate Justice MOORE dissented.]

SEPARATE OPINION OF ASSOCIATE JUSTICE GOULD.—Conceding, on the authority of Welton *v.* The State of Missouri, that the statute, in so far as it discriminates against wines and beer imported from other States, is in violation of the Constitution of the United States, my opinion is that so much of

the act as produces this discrimination may be rejected, and
that there will remain the body of the law, complete and
capable of execution, in accordance with the expressed legis-
lative intent, exacting the tax of all persons selling spirituous,
vinous, malt, or other intoxicating liquors.

On the question of the divisibility of the act, Welton *v.* The
State of Missouri is no authority. The statute, in that case,
was evidently indivisible, and was so treated.

The statute under consideration, in pursuance of the settled
policy of the State, seeks, in its main enacting clause, to raise
a revenue by imposing a tax on persons pursuing the occu-
pation of selling intoxicating liquors of any kind, including
wine and beer. For the evident but secondary purpose of
discriminating in favor of wines and beer manufactured in
the State, a proviso is added to exempt from this tax those
selling only such wines and beer. I say such is the evident
purpose of the proviso, because, if valid, such is its effect.
The object of the body of the law seems to be revenue and
the regulation of the occupation. The object of the proviso
seems to be the encouragement of home-manufactured wines
and beer. The relation of the leading objects of the law to
the subordinate object of the proviso is not such as to warrant
the belief that the act and the proviso were intended to stand
or fall as a whole, and that without the proviso, the revenue
or leading part of the law would not have been enacted.
The case presented does not differ materially, as to the divi-
sibility of the law, from any other invalid exemption appended
to a law imposing a tax. There is authority for striking out
the unconstitutional exemption, and leaving the law imposing
the tax to read as if no such provision had been inserted.
(People *v.* McCreery, 34 Cal., 447; Exchange Bank of Co-
lumbus *v.* Hines, 3 Ohio St., 34; Cooley on Taxation, 129.)

On the same principle, the proviso in this case may be
rejected, without the court justly incurring the charge of
legislating. There would be no presumption that the uncon-
stitutional purpose of discrimination was, though foreign to

the apparent leading object of the act, really the controlling object, and that without the proviso the law would not have been passed. But we are not left to presumptions. The second proviso reads: "And provided further, that this section shall not be so construed as to authorize druggists to sell spirituous or intoxicating liquors, except alcohol." This shows a prevailing intention that druggists, and certainly others as well as druggists, selling intoxicating liquors, should pay the tax. By rejecting the unconstitutional proviso, the legislative will, as expressed, is carried out, save as to one exception, which could not be made.

On this ground I think that there was a valid law imposing the full tax on all persons selling spirituous liquors, and that the judgment should be affirmed.

AFFIRMED.