[No. 1718.]

L. B. THOMPSON v. THE STATE.

1. OCCUPATION TAXES — INDICTMENT. — By the act of May 4, 1882, providing for the levy of occupation taxes, it is provided that there shall be levied on and collected " from every person, firm or association of persons selling or offering for sale the Illustrated Police News, Police Gazette, and other illustrated publications of like character, the sum of $500 in each county in which such sale may be or offered to be made." Indictment is sufficient to

charge the offense, if it alleges, in proper form, the following of the occupation of selling, and offering to sell, the Illustrated Police News and Police Gazette.

2. Constitutionality of Said Statute — "Equal" and "Uniform" Taxation.— It is only when individuals of a class are singled out for exemption that the objection, upon constitutional grounds, that the tax levied is not "equal and uniform upon the same class of subjects" can obtain. "The Illustrated Police News, Police Gazette, and other illustrated publications of like character" are the subjects embraced in the act of May 4, 1882. (Gen. Laws, Called Session, 17th Leg., sec. 3, p. 20.) This character of publications constitute a particular *class* under the law, distinct from other publications, the class being known and determined by the characteristic features of the two publications named. *Held*, that the objection that the act of May 4, 1882, is unconstitutional, because the tax levied by it is not "equal and uniform on the same class of subjects," is not well taken.

3. Same.— Taxing Power resides exclusively with the Legislature, and it is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void. *Held*, that the Legislature was fully empowered to levy the tax complained of. See the opinion *in extenso* on the question.

4. Same — Construction of Statutes.— In construing a statute courts look to the intent of the Legislature in enacting it, and not alone to its language. The object of the Legislature in enacting the statute upon which this prosecution was based is obvious and legitimate. The act is sufficiently definite and certain, and is leveled at a well known class of publications which were regarded by the Legislature as immoral and pernicious in their tendency, and that class is so identified in the act that there can be no misunderstanding as to the publications intended to be embraced therein. It was founded upon facts of such notoriety that courts will take judicial notice of them in arriving at the meaning, scope and purpose of the act. See the opinion *in extenso* on the question.

5. Same.— The tax imposed by the law under which this prosecution was had is not a tax upon property, but upon a privilege, and is a police regulation as well as a tax for revenue. The power of the Legislature to levy such a tax, though from its very nature incapable of exact definition or limitation, is absolute so far as natural persons are concerned.

6. Same.— It was within the discretion and power of the Legislature to enact as many statutes upon the subject under consideration as they thought needful to effectuate the object in view; and it is no sufficient objection to the law levying the tax, that there exists another statute for the prevention of the circulation of indecent and immoral publications.

Appeal from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

At the September term of the district court of Bexar county the appellant, who at that time was a newsdealer in the city of San Antonio, said county, was indicted for the offense "of pursuing the

occupation or business of selling and offering for sale the Illustrated Police News and Police Gazette without obtaining license and paying occupation tax therefor." Several demurrers were presented to the bill of indictment, which being overruled, upon his plea of not guilty, trial was had, resulting in his conviction and an assessment of a fine of $750.

The State proved the levy by the State of a tax of $500 per annum upon persons, firms, or associations of persons who should follow the occupation of selling or offering to sell the "Illustrated Police News, Police Gazette and other illustrated publications of like character;" also the levy by the county commissioners for the use of Bexar county, of a tax of $250 upon the same occupation.

County Collector Cassiano testified, for the State, that the defendant had never paid either the State or county tax so levied.

Junius Means testified, for the State, that in August, 1883, he purchased at the defendant's newspaper store on Main Plaza, in the city of San Antonio, Bexar county, Texas, a copy each of the "Illustrated Police News" and the "Illustrated Police Gazette." He several times saw those papers exposed for sale on the defendant's counters, during the year 1883. He bought the papers on the occasion referred to from the defendant's clerk. The business, however, was conducted in the name of the defendant.

The motion for new trial complained that the court erred in overruling the defendant's exceptions to the indictment; that the court erred in refusing certain charges requested by the defendant; that the verdict was contrary to the law and evidence, there being no proof that defendant ever sold the particular article taxed, nor was there proof of the length of time he sold the said articles, nor was there proof that defendant had any connection with the sale shown by the proof.

The motion in arrest of judgment alleged that the indictment charged no offense; that the act of May 4, 1882, so far as it attempts to levy the tax for the failure to pay which the defendant was indicted, is oppressive, indefinite and uncertain, and beyond the power of the Legislature; that the said act is repugnant to section 2, article VIII, of the Constitution; that the indictment did not sufficiently and with certainty describe the occupation for the pursuing of which the defendant was sought to be charged; that the prosecution was such as is expressly prohibited by section 8 of article I of the Constitution.

*Wheeler & Rhodes* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge.  By the act of May 4, 1882, which provides for levying occupation taxes, it is provided that there shall be levied on and collected "from every person, firm or association of persons selling, or offering for sale, the illustrated Police News, Police Gazette, and other illustrated publications of like character, the sum of $500 in each county in which such sale may be made or offered to be made." (Genl. Laws, Called Session 17th Leg., sec. 3, p. 20.) This conviction was had upon an indictment which charges the defendant, in proper form, with following the occupation and business of selling, and offering to sell, the illustrated Police News and Police Gazette, without paying the tax prescribed by law

There is but a single question presented by the record for our determination, and that is the constitutionality of the above quoted statutory provision.  Counsel for appellant contends that said law is unconstitutional for two reasons: 1. That the tax levied by it is not "equal and uniform upon the same class of subjects." (Const., art. VIII, secs. 1, 2.)  2. That it is oppressive, vague, uncertain, indefinite, and beyond the power of the Legislature.  We will consider these propositions in their order.

What class of subjects is embraced in this law?  Its language plainly answers the question; "the illustrated Police News, Police Gazette, and other illustrated publications of like character."  Whatever the publication may be, if it be illustrated, and of like character with the two named publications, it is included in the class of publications made subject to the tax.  This character of publications constitute a particular *class* under the law, distinct from other publications, the class being known and determined by the characteristic features of the two publications named as examples.  It is immaterial what may be the number of publications, whether few or many, which come within this class, still, if the tax levied reaches *all* belonging to the particular class, it is not obnoxious to the objection that it is not equal and uniform.  It is only when individuals of a class are singled out for exemption, that this objection can obtain.  (Cooley on Taxation, 128; Burroughs on Taxation, §§ 53, 54.)

This law exempts no publication belonging to the class represented by the two named publications, from the tax levied.  We conclude, therefore, that the tax levied is equal and uniform; applicable to all publications coming within the class designated.

The second objection is also, in our opinion, untenable.  The taxing power must be left to that part of the government which is to exercise it, that is, the Legislature, and "it is only where statutes are

passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void." (*Com.* v. *Savings Bank*, 5 Allen, 428; Cooley on Taxation, 126, 127.) Mr. Cooley says: "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use or enjoyment; to every species of possession." (Cooley on Const. Lim., 598.) And it was said by that great jurist Chief Justice Marshall, that it is "unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of power." (*McCulloch* v. *Maryland*, 4 Wheat., 430.)

It is not for this court, therefore, to say whether this tax is oppressive. That was a question for the Legislature to pass upon, and the judiciary has no right to inquire into it. It is to be conclusively presumed that the Legislature had good and sufficient reasons for imposing this tax upon persons selling or offering to sell the publications named, and all other publications of the same character.

The law is, in our opinion, sufficiently definite and certain. It is leveled at a well known class of publications which were regarded by the Legislature as immoral and pernicious in their tendency, and there can be no misunderstanding the class of publications intended to be embraced in the act. In construing a statute we must look to the intent of the Legislature in enacting it, and not alone to its language. It is a matter of notoriety that when this law was enacted an illustrated publication known as the Police News, and another known as the Police Gazette, were offered for sale, and were sold in all the cities of the State, and upon the passenger trains of all the railroads in the State; and, further, that these publications were of an indecent, immoral and pernicious character, and that many of the citizens of the State demanded some legislation that would prevent, restrict or regulate this class of publications. These are facts of such notoriety that the courts will take judicial notice of them in arriving at the meaning, scope and purpose of the act in question. (1 Whart. Ev., § 330; *Stearnes* v. *The State*, 21 Texas, 705; *Allbrecht* v. *The State*, 8 Texas Ct. App., 216.)

The tax imposed by this law is not a tax upon property, but upon

a privilege, and is a police regulation as well as a tax for revenue. The power of the Legislature to levy such a tax, in the language of Justice Miller, "is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property. It extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State; and persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State. Of the perfect right of the Legislature to do this, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned." (*Slaughter-House Cases*, 16 Wallace, 62.)

In support of our view, that the law in question is valid; that it was fully within the power of the Legislature to enact it, and that it is not obnoxious to any of the objections made to it, we cite the following additional authorities: Cooley on Taxation, 396, 403, 404; Cooley on Const. Lim., 713, 725, 748, 749; Burroughs on Taxation, § 77; *Languille* v. *The State*, 4 Texas Ct. App., 312; *Higgins* v. *Rinker*, 47 Texas, 393.

It is no sufficient objection to the law levying the tax that there exists another statute for the prevention of the circulation of indecent and immoral publications. (Penal Code, art. 343.) It was within the discretion and power of the Legislature to enact as many statutes upon the subject as were thought by them to be necessary to regulate, restrict or prohibit the evil which they were seeking to remedy.

We are of the opinion that there is no error in the conviction, and the judgment is affirmed.

*Affirmed.*

[Opinion delivered December 3, 1884.]