## L. B. THOMPSON V. THE STATE OF TEXAS.

### IN COURT OF APPEALS, TYLER TERM, 1884.

*Occupation Tax—Indictment*—The Act of May 4, 1882, special session, 17th legislature denounced a tax upon all persons following the occupation or business of selling, or offering to sell the Illustrated Police News, Police Gazette and other illustrated publications of like character. Indictment alleging in proper form the following of such occupation is sufficient to charge the offense punishable under said act.

*Constitutional Law—"Equal and Uniform Taxation."*—It is only when individuals of a class are singled out for exemption, that the constitutional objection, that the tax levied is not "equal and uniform on the same class of subjects" can obtain. The publications named in the act of May 4, 1882, embrace a particular class, to which there is no exemption, and objection taken is not tenable, (See the opinion on the question.

*Same—Taxing Power* resides exclusively in the legislature, and it is only when statutes are passed which impose taxes on false and unjust principles or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void. It is not the provin ceof the court to declare whether a tax is oppressive, and in this case the legislature had full power to levy the tax complained of.

*Same—Construction of Statutes.*—In construing a statute, courts must look to the intent of the legislature in enacting it, and not clone to its language. The object, of the legislature in enacting the statute upon which this prosecution was based is obvious and legitimate. (See the opinion.)

*Same.*—The tax imposed by the law under consideration, is not a tax upon property, but upon a privilege, and is a police regulation as well as a tax for revenue. The power of the legislature to levy such a tax, though incapable of exact definition or limitation, is absolute so far as concerns national persons

*Same.*—It was within the discretion and power of the legislature to enact as many statutes upon the subject under consideration as they thought it proper to effectuate the object in view ; and it is no sufficient objection to the law levying the tax, that there exists another statute for the prevention of the circulation of indecent and immoral publications.

Appeal from Bexar county.

#### OPINION.

By the act of May 4, 1883, which provides for buying occupa-

tion taxes, it is provided for that there shall be levied on and collected, "from every person, firm or association of persons selling or offering for sale, the Illustrated Police News, Police Gazette, and other illustrated publications of like character, the sum of five hundred dollars in each county in which such sale may be made or offered to be made." (Gen. Laws, Called Session 17th Leg., Sec. 3, p. 20.) This conviction was had upon an indictmnet which charges the defendant in proper form, with following the occupation and business of selling, and offering for sale the Illustrated Police News and Police Gazette, without paying the tax prescribed by law.

There is but a single question presented by the record for determination, and that is the constitutionality of the above quoted statutory provision. Counsel for appellant contends that the said law is unconstitutional for two reasons. 1. That the tax levied by it is not "equal and uniform upon the same class of subjects." (Const., Art. VIII, Sec. 1–2.) 2. That it is oppressive, vague, uncertain, indefinite and beyond the power of the legislature. . We will consider these propositions in their order.

What class of subjects is embraced in this law? Its language plainly answers the question ; the Illustrated Police News, Police Gazette, and other illustrated papers of like character. Whatever the publication may be, if it be illustrated, and of like character with the two named publications, it is included in the class of publications made subject to the tax. This character of publications constitute a particular *class*, under the law, distinct from other publications, the class being known and determined by the characteristic features of the two publication named as examples. It is immaterial what may be the number of publications, whether few or many, which come within this class, still, if the tax which is levied reaches *all* belonging to the particular class, it is not obnoxious to the objection that it is not equal and uniform. It is only when individuals of a class are singled out for exemption, that this question can obtain. (Cooley on Taxation, 128 ; Burroughs on Taxation, pp. 53–54.) This law exempts no publication belonging to the class represented by the two named publications from the tax levied. We conclude therefore, that the tax levied is equal and uniform, applicable to all publications coming within the class designated.

The second objection is also, in our opinion untenable. The taxing power must be left to that part of the government which is to

exercise it, that is the legislature, and it is only when statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void. (Com. v. Savings Bank, 5 Allen, 428 ; Cooley on Taxation, 125 7 ) Mr. Cooley says : "The power to impose taxes is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions wh itever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation ; to every object of industry use or enjoyment ; to every species of possession." (Cooley on Const. Lim., 598.) And it was said by that great jurist, Chief Justice Marshall, that it is unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of power." (McCulloch v. Maryland, 4 Wheat, 430.) It is not for this court, therefore, to say whether this tax is oppressive. That was a question for the legislature to pass upon, and the judiciary has no right to inquire into it. It is to be conclusively presumed that the legislature had good and sufficient reasons for imposing this tax upon persons selling or offering to sell the publications named, and all other publications of the same character. The law is in our opinion, sufficiently definite and certain. It is leveled at a well known class of publications which are regarded by the legislature as immoral and pernicious in their tendency, and there can be no misunderstanding the class of publications intended to be embraced in the act.

In construing a statute we must look to the intent of the legislature in enacting it, and not alone to its language. It is a matter of notoriety that when this law was enacted, an illustrated publication known as the Police News, and another as the Police Gazette, were offered for sale, and were sold in all principal cities of the state, and upon the passenger trains of all the railroads in the state ; and further, that these publications were of an indecent, immoral, pernicious character, and that many of the citizens of the state demanded some legislation that would prevent, restrict or regulate this class of publications. These are facts of such notoriety that the courts will take judicial notice of them in arriving at the

meaning, scope and purpose of the act in question. (1 Whart Ev., ૧ 330; Stearns v. State, 21 Tex., 705 ; Albrecht v. State, 8 Ct. App., 216.)

The tax imposed by this law is not a tax upon property, but upon a privilege, and is a police regulation as well as a tax for revenue. The power of the legislature to levy such a tax, in the language of Justice Miller, is and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizens, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property. It extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state, and persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state. Of the perfect right of the legislature to do this, no question ever was, or upon acknowledged general principles, ever can be made as far as natural persons are concerned. (Slaughterhouse cases, 16 Wallace, 62.) In support of our view that the law in question is valid; that it was fully within the power of the legislature to enact it, we cite the following additional authorities : (Cooley on Taxation, 396-403-404 ; Cooley on Const. Lim., 713, 725, 748-9; Burroughs on Taxation, ¶ 77 ; Languille v. the State, 4 Ct. App., 312 ; Higgins, v. Rinker, 47 Tex., 393.)

It is no sufficient objection to the law levying the tax, that there exists another statute for the prevention of the circulation of indecent and immoral publications. (P. C. Art. 343.) It was within the discretion and power of the legislature to enact as many statutes upon the subject as were thought by them to be necessary to regulate, restrict or prohibit the evil which they were seeking to remedy.

We are of the opinion that there is no error in the conviction, and the judgment is affirmed.

Willson, J.