## RANDON V. BARTON.

Wherever it is proper to join several defendants in the same suit, the suit may be instituted in any county where one of the defendants resides.

Where a divisible obligation to do a thing was given to two, and one of the obligees, without authority from the other, but professing to have such authority, assigned it to another: *Held*, That the assignee could join the obligees and obligor as defendants in the same suit, and recover one-half of the obligation from the obligor and damages for the other half from the assignor.

Where a person undertakes to assign an instrument which he has no right to assign, he is not entitled to demand due diligence of the assignee to collect the money or enforce the obligation.

No demand and notice or other evidence of diligence is necessary when from the facts of the case it is apparent that the party to be charged had no right to expect it and could not have been injured by the want of it.

A contract for the transfer of land certificates need not be under seal.

The rule respecting the measure of damages for breach of contract to transfer and deliver land certificates is that which applies to the breach of contracts for the sale of chattels, not of lands. (Note 58.)

Where contracts for the sale of chattels are broken by the failure of the vendor to deliver the property according to the terms of the contract, if the price has not been paid in advance, the measure of damages is the difference between the price contracted to be paid and the value of the article at the time when it should have been delivered; but if the price has been paid in advance, the purchaser is entitled to the advantage of any rise in the market value of the article which may have taken place up to the time of the trial. (Note 59.)

Where the suit was for land certificates or their value, and the jury found for the plaintiff "two thousand and eighty acres of land, at eighteen and three-quarter cents per acre," the court gave judgment in favor of the plaintiff for three hundred and ninety dollars: *Held*, There was no error.

Error from Bastrop. The defendant in error brought suit [290] against the plaintiff in error jointly with Edward Burleson and Thomas F. McKinney, in the District Court for Bastrop county, on the 20th day of July, 1847. The petition alleged, in substance, that the plaintiff was the owner of a certain contract in writing, made by Burleson with McKinney and Randon, for the transfer, by the former to the latter, of certain land certificates described in the petition, and calling for the quantity of four thousand one hundred and sixty acres of land; that for a valuable consideration the defendant Randon contracted to transfer, and did assign to the plaintiff, the entire interest in said contract, the said Randon representing that the entire interest belonged to him, and that McKinney had transferred to him all the right and interest which he ever had in the contract; that the plaintiff had presented the contract to Burleson, the maker, and demanded the certificates referred to, but that he had refused to deliver or transfer the certificates, alleging that there still remained in said McKinney a right to the undivided half of them, and that he had been notified by McKinney of his interest. The plaintiff alleged that he had sustained damages, etc., and prayed that the entire interest of all the defendants be decreed to him; or if, by reason of the claim and rights of the defendant McKinney, that cannot lawfully be done, that the interest of the defendant Randon be adjudged to him, and that he have judgment against said Randon for the value of so much in amount of the certificates assumed to be conveyed by him as he, Randon, had no authority or right to convey, which he alleged to be of the value of twenty-five cents per acre. The petition alleged that the defendant Burleson resided in the county of Bastrop, McKinney in the county of Galveston, and Randon in the county of Fort Bend, and concluded with a prayer for process and for general relief. The contract described in

## Randoṅ v. Barton.

the petition and made a part of it is set out in the record, and purports to be made by Burleson in favor of McKinney and Randon, and to have been assigned by Randon to the plaintiff Barton, as follows: "I have this day transferred the [**291**] above obligation on Gen. E. Burleson, for four thousand one hundred and sixty acres of land certicates, to Wayne Barton, for the valuable consideration of four hundred dollars, this 18th February, 1847.

D. RANDON."

At the fall Term, 1847, the defendants McKinney and Burleson answered, and the plaintiff had judgment against the latter for two thousand and eighty acres of land certificates, being half the amount claimed in the petition; and the defendant Randon having been served with process and failing to appear, judgment by default was taken against him, and a writ of inquiry awarded; upon which, after hearing the evidence, the jury returned a verdict for the plaintiff for two thousand and eighty acres of land, at eighteen and three-fourths cents per acre, and the court thereupon gave judgment for $390; to reverse which the defendant Randon prosecuted this writ of error.

*Munger*, for plaintiff in error. The obligation of Randon was an independent one. There was no such privity as justified the joinder of him in a suit against Burleson.

II. The contract was for the conveyance of realty, and should have been sealed.

III. The plaintiff did not use due diligence to enforce the obligation against the maker. The instrument was assigned on the 18th of February, and suit was not commenced until the 20th of July thereafter. He was not, therefore, liable as surety. It will hardly be contended that he can be held liable in warranty in an action like this.

IV. Neither in law nor equity can the plaintiff recover "the present value of the certificates." He was at most only entitled to $200 and interest from the time he paid the money.

V. The court had no jurisdiction of the suit, if for land; no jurisdiction of the person, if the suit was for damages.

*Gillespie*, for defendant in error. The joinder of the defendants [**292**] is authorized upon general principles of law, and seems to be enjoined by the act of 1846, p. 375, secs. 48, 49.

WHEELER, J. Of the several errors assigned there are but two which are deemed of a character to require particular notice, and these are—

1st. That the plaintiff did not show the use of diligence sufficient to charge the indorser, Randon.

2d. That the verdict is illegal in having found the present value of the land certificates.

That the plaintiff could maintain this action against the defendants jointly, and in the county of the residence of either, cannot admit of a doubt. (Acts of 1846, p. 375, sec. 46; Id., pp. 363, 364, sec. 1.)

But it is insisted that the plaintiff did not use due diligence to enforce his contract against the maker. To this objection it is a sufficient answer that the present is not a case to which the rules which have been invoked respecting diligence are applicable. The defendant Randon undertook by his assignment to transfer an interest which he did not possess and which he had no right to convey. His assignment, therefore, was a fraud upon the plaintiff, and he had no right to notice the refusal of the maker to perform the contract. He had no right to expect that Burleson would convey the certificates upon his individual assignment. No demand and notice or other diligence, therefore, was necessary to charge him. The reason for giving notice and the necessity of it ceases when from the facts of the case it is apparent that the party to be charged had no right to expect it and cannot have been injured by the want of it. (2 Stark. Ev., 160, 161, 165.)

## Randon v. Barton.

To determine the remaining question, it becomes necessary to ascertain what was the true measure of damages for the breach of contract complained of. And it is to be observed that this was not a contract to convey land or any estate or [**293**] interest in land, but merely for the transfer of unlocated land certificates. It is true that the jury in their verdict employed the word "land," but from the whole verdict taken together and in reference to the issue it is very clear that they meant land certificates only. The rule, therefore, respecting the measure of damages applicable to this case is that which applies to the breach of contracts for the sale of chattels, not of lands.

When contracts for the sale of chattels are broken by the failure of the vendor to deliver the property according to the terms of the contract, it is well settled that as a general rule the measure of damages is the difference between the price contracted to be paid and the value of the article at the time when it should be delivered, upon the ground that this is the plaintiff's real loss, and that with this sum he can go into the market and supply himself with the same article from another vendor. (Sedgw. Meas. of Dam., 260.) But where the purchaser has paid the price in advance, or has otherwise, as in the loan of stocks, been deprived of the use of his property, there are different and conflicting decisions upon the question whether the purchaser is limited to the value of the article at the time for delivery, or shall have the advantage of any rise in the market value of the article which may have taken place up to the time of trial. In England and New York the latter rule is laid down, on the ground that the purchaser, having been deprived of the use of his property, is entitled to the best price he could have obtained for the article up to the time of the settlement of the question. (Ib., 2 East. R., 211; 2 Taunt. R., 257; 2 B. & Cres. R., 624; 2 Caine's Cas. E., 200; 3 Cow. R., 82.)

In the case of Clark v. Pinney, 7 Cow. R., 681, the distinction between contracts wholly executory and those where payment has been made was taken and firmly maintained by the Supreme Court of New York. The action was upon a contract for value received to deliver on a future day a certain quantity of salt, at a stipulated price per bushel. [**294**] The court held that as the goods had been paid for, the measure of damages was the difference between the contract price and the highest price at any time between the period appointed for delivery and the day of trial. After recurring to the authorities, the court say: "We hold it, therefore, to be settled by authority, and rightfully settled upon principle, that where a contract is made for the sale and delivery of goods or chattels, and the price or consideration is paid in advance, and an action is brought upon the contract for the non-delivery, the plaintiff is not confined in measuring his damages to the value of the article on the day when they should have been delivered." The same rule was laid down in the earlier case of West v. Wentworth, (3 Cow. R., 82.) Chancellor Kent, in his Commentaries, (2 Kent, 480, n. *b*, 5th ed.,) says: "The general rule is well settled that in a suit by a vendee for a breach of contract on the part of the vendor for not delivering an article sold the measure of damages is the price of the article *at the time of the "breach."* This undoubtedly is the rule where the price has not been paid in advance by the vendee; but, as has been remarked by Mr. Sedgwick, the learned commentator has omitted to advert to the distinction resulting from the payment of the price in advance, which runs through the English and New York cases, and which seems to us a sound distinction. In several of the States, however, this distinction has not been recognized. (3 Mass. R., 364; 5 W. & S. R., 106; 2 Con. R., 485.) It seems to have met with the approval of Chief Justice Marshall. In an action brought upon a contract for the delivery of cotton at ten cents per pound, which when it was to have been delivered was worth twelve cents, and before the suit was brought had risen to thirty cents per pound, the plaintiffs insisted that they were entitled to the highest market price up to the rendition of the judgment. But the unanimous opinion of the court was "that the price of the article at the time it was to be delivered was the measure of damages." There had been no money advanced and Marshall, [**295**] Ch. J.,

Randon v. Barton.

said: "For myself only I can say that I should not think the rule would apply to a case where advances of money had been made by the purchaser under the contract. But I am not aware what would be the opinion of the court in such a case." (3 Wheat. R., 200.)

This distinction is maintained by the authority of at least the courts of England and New York, and we think rightly upon principle; and its application seems peculiarly appropriate in the present case. Here the money was paid in advance. The contract was for the transfer of land certificates, and resembles in some respects contracts for the transfer of stock, in respect to which it seems generally to have been held that the damages should be calculated at the price on the day of trial. In a case of this character in the King's Bench, (2 East R., 211,) Grose, J., said: "The true measure of damages in all these cases is that which will completely indemnify the plaintiff for the breach of the engagement." And Lawrence, J., said: "Suppose a bill were filed in equity for a specific performance of an agreement to replace stock on a given day, which had not been done at the time: would not a court of equity compel the party to replace it at the then price of stock, if the market had risen in the meantime?"

The court in the present case decreed a specific performance against the defendant Burleson, and the same would unquestionably have been decreed against Randon, if the interest had been in him and he had been legally capacitated to make the transfer. The plaintiff would then have obtained the certificates specifically. Shall he be placed in a worse condition because Randon had not the title or right to make the transfer; or shall this defendant, for that reason, be placed in a better condition or be permitted to discharge his liability with a less sum than his codefendant Burleson? Or rather shall he make such compensation as will completely indemnify the plaintiff for the breach of the engagement, by enabling him to go into the market and purchase an amount of certificates equal to that which the defendant assumed to [**296**] transfer to him? This would be most consonant with justice, and is, it is conceived, the correct rule upon principle and authority. It accords to all parties the same measure of justice.

We have considered the question upon the supposition that the jury estimated the value of the certificates at the time of the trial; and we concluded that it was not improper to do so. But there is no statement of facts; and as the prayer of the petition is for the "present value" of the certificates, the estimate may have been of their value at the commencement of the suit. If so, it would not vary the conclusion at which we have arrived. There would, perhaps, in that case be less room for doubt as to the accuracy of that conclusion. (Clark v. Pinney, 7 Cow. R., 681.)

Judgment affirmed.

LIPSCOMB, J. I rest my concurrence on the ground that payment had been made under the contract. If no payment had been made, I should in that event believe that a different rule of damages would govern the case.

NOTE 58.—James v. Drake, 39 T., 143; Johnson v. Newnam, 43 T., 628.

NOTE 59.—Calut v. McFadden, 13 T., 324; Brasher v. Davidson, 31 T., 190; Cartwright v. McCook, 33 T., 612