## FRANK MOTL v. J. H. STEPHENS.

### Decided January 29, 1908.

**1.—Statement of Facts—Approval of Judge.**

A trial judge is not bound by what the parties to a suit might agree on as. a statement of facts proved on the trial, but he has the power to make such corrections as he deems proper in accordance with the facts before approving the same.

**2.—Trespass to Try Title—Boundary—Agreement—Estoppel.**

Growing out of a dispute as to a boundary, a suit of forcible entry and detainer was filed for possession of the strip of land in dispute; pending that suit the defendant executed to the plaintiff a release in writing of all his right to the land involved therein, and the suit was dismissed; subsequently, the defendant in that suit filed a suit of trespass to try title against the plaintiff in that suit to recover said strip of land; the land in dispute in the forcible entry and detainer case was described in the complaint as being upon one survey, and in the petition in the· suit of trespass to try title it was alleged to be upon a different survey, but in both documents it was described by metes and bounds so that it was obvious that the land in controversy in both suits was the same, and the plaintiff in the latter suit admitted on the trial that such was the case. Held, that in the suit of trespass to try title the court properly instructed a verdict for the defendant.

Error from the District Court of Williamson County. Tried below before Hon. V. L. Brooks.

*W. K. Makemson* and *A. M. Monteith,* for plaintiff in error.

*A. J. ·Harris,* for defendant in error.

KEY, ASSOCIATE JUSTICE.—This is a suit of trespass to try title, Frank Motl being the plaintiff and J. H. Stephens the defendant. After hearing all the testimony the trial judge instructed a verdict for the defendant, and the plaintiff has brought the case to this court by writ of error.

The action of the court in instructing a verdict was based upon a written contract by which the plaintiff in this case relinquished all of his right to a tract of land involved in a suit of forcible entry and detainer. The land involved in that suit was described in the complaint as follows: "A tract of 40 acres of land in the Thornton Stone league bounded by lines beginning on, to wit: 1000 varas east of the southeast corner of said Thornton Stone survey or league and on the south line thereof, running thence south, 71 E., 1500 varas to the southeast corner of the 160 acre tract sold by J. C. Midkiff to J. H. Stephens, and conveyed by deed dated the second day of January, A. D. 1886·; thence north 140 yards; thence N. 71 W. 1500 varas; thence S. 140 steps to the place of beginning, the same being on said Thornton Stone league and north of the road recently opened on the league line between Thornton Stone league . and Woodford surveys."

The land sued for in this case is described as follows in the plaintiff's petition: "Lying and being in the county of Bell and State of Texas, a part of the William Woodford league survey, and described by metes and bounds as follows: Beginning at the original northwest corner of said Woodford league, from which an Elm bears south 88 east, 22 varas, being the original bearing tree to the northwest corner of said Woodford league, and the northeast corner of the Stephen Duggins league survey, and a Hackberry marked "X," 8 inches in diameter bears north 85¾ west, 40¼ varas; thence south 71 east with the north line of the said Woodford league, 830 varas to a stake for northeast corner of this tract, from which a hackberry 10 inches in diameter marked 'X' bears south 55° 10′ west 196 4-10 varas; thence south 19 west, 1360 varas to a stake for southeast corner, from which an elm bears south 71 west, 31½ varas; thence north 71 west, 830 varas to a stake for southwest corner in west line of said Woodford league; thence north 19 east, 1360 varas to the place of beginning; containing 200 acres of land."

In the forcible entry and detainer suit the defendant in this case was the plaintiff, and the plaintiff here was the defendant. The agreement referred to, by which the plaintiff Motl relinquished his right to the land then in controversy to the defendant Stephens, was executed before the present suit was commenced. The statement of facts shows that it was agreed between the parties that the land actually in controversy is a strip on the northern end of the tract described in the plaintiff's petition, about 164 varas in width and 830 varas in length, the course of the east and west lines being south 71 east and north 71 west, and the course of the north and south lines being north 19 east and south 19 west, said strip being bounded on the south by the Temple-Cyclone road, and on the north by the north line of the tract of land described in the plaintiff's petition as fixed by bearing trees for the northeast and southwest corners of plaintiff's tract. It was also shown that the William Woodford and Thornton Stone are adjoining surveys, the north line of the Woodford being the south line of the Stone.

It was also agreed that if the land in controversy was a part of the Woodford survey the plaintiff Motl was entitled to recover it, unless prevented from so doing by the contract hereinbefore referred to, or by proof of an agreed line, showing that the land in controversy was part of the Stone survey and not on the Woodford. The statement of facts shows the following testimony relating to the execution of the relinquishment and the identity of the land:

"Frank Motl testified that after the suit was instituted against him by J. H. Stephens in the Justice's Court of Temple, and on the day set for trial of the same, Parson May told him that he had better make an agreement with Stephens and that May acted for him in making said agreement, which was reduced to writing and signed by Stephens and himself, and that May told him, Motl, that he would hold the land if it was part of the Wm. Woodford survey, and that Stephens would hold the same if it was a part of the Thornton Stone survey; that he had no conversation with nor

understanding with Stephens about this before the agreement was made nor afterwards; that all the talk for him was done by Parson May; that after the agreement was made he, Motl, said that if it turned out that any part of the land was in the Woodford survey he would institute suit for the same in the court, and he afterwards, about one year, commenced this suit in the District Court of Bell County, Texas. That he is by nationality a Bohemian and had just come to this country from Austin County, Texas; that there were five or six Bohemian families in that neighborhood and that all the other people there were Americans; that the reason why he made the agreement with Stephens was that he was afraid the Americans would run the Bohemians out of the country. That he had little education, could understand but little of the English language, could read a little and did not understand the American ways, and that he was afraid to have any trouble or litigation because he was a stranger and did not understand the American ways; that before said written agreement was made he had fenced his land up to the north line and fenced across the Temple-Cyclone road; that after the agreement was made he pulled down his fences and set them up south of the road, and that Stephens fenced the land to the north side of said road; that he nor the other Bohemians had never moved the schoolhouse, but that the same stands where it stood at that time; that he did not open the road or remove the fences because of the agreement that was made, but because he did not want trouble or litigation; that all the land that is in controversy between him and Stephens' land lies north of the Temple-Cyclone road, and none other. That he is now a merchant and had been for a number of years at Seaton, Bell County, Texas, in the neighborhood of the land in controversy.

"Dr. J. H. Stephens testified that he was acquainted with Frank Motl; that he is a physician and has done his practice for a number of years; that Motl was a man of intelligence and shrewdness, and at the time the contract was made with him about the boundary he could read English and talk English, and that before the agreement between him and Motl was made he had a conversation with him in regard to the same and had made the agreement verbally with Motl, which was reduced to writing. He also testified that before the agreement was made Motl had fenced the lands in controversy, fencing up the said road, and that after the agreement he removed the fences and placed the same south of the road; that he, Stephens, had fenced the land north of the road; that the schoolhouse had not been moved from his premises, but that Motl and the other Bohemians were authorized to do so at any time. Motl came to me voluntarily and proposed to settle the dispute and give up the land if I would dismiss the suit in Justice's Court at Temple or let the matter be settled by the judgment of the justice, as agreed upon. There has never been any ill-feeling or unfriendliness between Frank Motl and myself. Frank Motl is a successful business man. There never was anything said by Motl to me or in my hearing to the effect that he would claim this disputed strip of land if it was part of the Woodford survey. When Motl came to

me and offered to settle the suit Parson May was with him, but I had no conversation with May, my talk was all with Motl.

W. K. Makemson and A. M. Monteith,
Attorneys for Frank Motl, Plaintiff.

A. J. Harris,
Attorney for Defendant, J. H. Stephens.

"In Chambers March 1, 1906.

"The foregoing statement of facts has been examined by me, and is hereby approved as a correct statement of the evidence given on the trial of the above styled and numbered cause, except that it does not correctly and fully state the testimony given on said trial by the plaintiff, Frank Motl, and the defendant, J. H. Stephens. The plaintiff, Frank Motl, testified on said trial as follows, in addition to his testimony as above stated, viz.:

"In 1886, and just prior to the filing of the forcible entry and detainer suit against me by Dr. Stephens in the Justice's Court in Bell County, I enclosed the land which I have sued for in this case with a fence. The land so enclosed was the exact tract which I have sued to recover in this case, no more and no less. When I enclosed this tract of land Dr. Stephens instituted the suit mentioned in the Justice's Court of Bell County to recover the possession of same from me. After the suit was instituted I entered into a written agreement with Dr. Stephens, by the terms of which I agreed to relinquish all my right and title to and possession of the land for which I am now suing in his favor for certain considerations. I understood at the time I made the agreement that it related to the land the title to which is involved in the present suit, and to no other land. I further understood that it related to all of the land the title to which is involved in the present suit. The title in no other land was in controversy between us, or has ever been; and the title to the land in controversy in this suit was then also in controversy between us. I was not misled by Dr. Stephens or by anyone representing him into signing said agreement; and I have no reason to suppose that Dr. Stephens, at the time said agreement was made, knew of any advice that Parson May had given me as to its legal effect. I signed the agreement voluntarily and because a man knows a great deal more after he gets out of the courthouse than he does before he goes into it; no one forced me or frightened me into making the agreement.

"The defendant, Dr. J. H. Stephens, testified as follows, viz.: At the time the written agreement was made between Frank Motl and myself the title to no land was in controversy between us except the identical land for which he sues in the present case, and the title to this latter land was then in controversy between us. No matter how the land is described in the pleadings in the Justice Court case, it was the land for which I am sued in this case and no other, that was involved in that controversy. I surrendered certain rights in consideration of the execution by Frank Motl of the agreement mentioned, and neither in person nor through anyone else gave him any advice whatever as to its legal effect. I knew of

no legal advice that had been given him on the subject by Parson May or by anyone else. I accepted the agreement in good faith as a relinquishment by him in my favor of whatever right, title or interest he might previously have had to the land, the title to which is involved in this suit. Motl at the time he executed said agreement was a shrewd and intelligent man, and understood the English language sufficiently well to thoroughly know the contents of the writing.

"V. L. Brooks, Judge."

The only point for decision is the action of the trial judge in directing a verdict for the defendant, and our conclusion is that such action was correct and proper. It requires the approval of the trial judge in order to constitute a statement of facts, and the judge is not bound by what the parties have agreed to, and has the power to make such corrections as he deems proper before approving a statement of facts. Therefore, this case must be disposed of in this court upon the statement of facts as corrected and approved by the judge. However, it is not inappropriate to add that counsel for the plaintiff in error have not in their brief or oral argument, denied the right of the trial judge to correct the statement of facts, nor intimated that the corrections made were not justified by what actually occurred at the trial.

According to the testimony given by the plaintiff Motl, the land involved in the former suit, and to which he relinquished all of his right to the defendant, was the identical land involved in this suit. It is true that it was described in the written relinquishment as part of the Stone survey, and the land involved in this suit is described in the plaintiff's petition as part of the Woodford survey; nevertheless each tract is further described by metes and bounds, and we have no reason to suppose that the plaintiff did not know the exact location of such boundaries and did not fully understand the meaning and purport of what he said when he testified that the land involved in the former suit is the identical land involved in this suit, and that he so understood it to be at the time he executed the written relinquishment. Having so testified, we do not think that he was entitled to have the case submitted to the jury, in order that he might ask for a verdict upon the theory that they were separate and distinct tracts of land. No error has been shown and the judgment is affirmed.

*Affirmed.*