## UNITED STATES v. ROSE.
### No. 2762.

Court of Civil Appeals of Texas. El Paso. Feb. 2, 1933.

Rehearing Denied March 2, 1933.

C. W. Johnson, Jr., U. S. Dist. Atty., of Fort Worth, and Eric Eades, Chief Atty., Veterans' Administration, of Dallas, and John W. Beveridge, Asst. U. S. Dist. Atty., of Fort Worth, for the United States.

J. Cleo Thompson, of Dallas, for defendant in error.

HIGGINS, Justice.

The United States of America prosecutes this writ of error from a judgment of the district court of Dallas county.

The cost bond upon the writ of error is in due form. The plaintiff in error's signature to the bond was affixed "By A. M. Mood, Assistant United States District Attorney."

Defendant in error moves to dismiss for want of a sufficient bond; the ground of the motion being that there is no act of Congress granting authority to an assistant United States district attorney to execute such a bond and thereby bind the United States on the same. It has been often held that a bond upon writ of error or appeal is good though signed by the sureties only.

Some of the cases so holding are Shelton v. Wade, 4 Tex. 148, 51 Am. Dec. 722; Bridges v. Cundiff, 45 Tex. 437; Palmer v. Spandenberg (Tex. Civ. App.) 108 S. W. 477; and Duller v. McNeill (Tex. Civ. App.) 161 S. W. 45.

Since plaintiff in error's signature to the bond is not necessary, it follows that it is immaterial whether the assistant United States district attorney was authorized to affix its signature to such bond. The motion is overruled.

This proceeding originated in the probate court. The controversy is over the proper distribution of a fund belonging to the estate of George H. Rose, a deceased soldier. The fund is the proceeds of a war risk insurance policy. The judgment awarded the fund to the defendant in error, the surviving wife of the deceased.

Briefly stated, the pleading of the plaintiff in error alleges the following:

George H. Rose was a soldier during the World War, and his mother was the designated beneficiary of the policy. On October 15, 1918, Rose died intestate. The monthly installments payable upon the policy were paid to the mother until her death. Thereafter plaintiff in error made payments totaling $4,485 to two sisters of the deceased soldier under the belief and upon the representation that they were the only heirs at law of the soldier. Thereafter defendant in error, Bennie Lee Rose, filed claim against the government for all the proceeds of the insurance

policy and thereafter qualified as administratrix of the estate of the soldier and as such sued plaintiff in error in the United States District Court and obtained judgment for $8,-602, which sum is now in her hands as administratrix.

In said suit plaintiff in error recovered judgment against the two sisters for the sums previously paid to them and said sisters have assigned to plaintiff in error their interest in the estate of the deceased soldier. At the time of his death, the soldier was a resident of Oklahoma, and left surviving him his mother and said two sisters as his only heirs. The mother died intestate on June 20, 1922, leaving as her only heirs the plaintiff in error's assignors. That under the laws of the United States and Oklahoma the surviving sisters of Geo. H. Rose are entitled to one-half of the fund in the hands of the administratrix. That under the law of Oklahoma the surviving wife of Rose was entitled to one-half of the fund and the other one-half would descend to and vest in the assignors of plaintiff in error as the heirs of the mother.

The prayer was that the administratrix be required to pay one-half of the fund to plaintiff in error.

The pleadings of defendant set up that the policy was issued to Rose while he was married to her, the premiums paid by him during coverture out of his monthly pay as a soldier, and she claimed the entire fund as the surviving wife under the law of Oklahoma.

In Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 41, 76 L. Ed. 419, 81 A. L. R. 923, the court, in referring to the Act of March 4, 1925, § 14, amending section 303 of the World War Veterans' Act of 1924 (38 USCA § 514), said: "By that amendment, the rule, which, upon the happening of the contingencies named in the prior acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and 'the estate of the insured' was wholly substituted as the payee. All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured as of the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The state courts, with almost entire unanimity, have reached the same conclusion." See, also, Battaglia v. Battaglia (Tex. Civ. App.) 290 S. W. 296, and Turner v. Thomas (Tex. Civ. App.) 30 S.W.(2d) 558.

■ It is thus apparent from the pleadings that the question presented is controlled by the law of descent and distribution of the state of Oklahoma.

■ The courts of this state cannot take judicial notice of the law of Oklahoma. Such law must be pleaded and proven as facts. This is elementary.

There appears in the clerk's transcript a stipulation signed by counsel, dated August 17, 1931, and filed prior to the trial. This stipulation agrees to certain facts.

Another agreement appears in the transcript filed some time subsequent to the trial. This agreement recites:

That the stipulation filed "on August 17th, 1931, is a full, true and correct statement of the facts adduced on the trial of this cause and constitutes a statement of all the material facts in this proceeding in error to the honorable Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, sitting at Dallas, Texas, with the following additions:

"That article 8418 of the Revised Laws of Oklahoma of 1910 was introduced in evidence as the Law of Oklahoma, which article is as follows:

"'8418. *Descent and Distribution.* When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner: * * *

"'Second. If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half goes, in equal shares, to the brothers and sisters of the deceased, and to the children of any deceased brother or sister, by right of representation. If decedent leaves no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife, during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation. * * *'

"And that the defendant in error, Bennie Lee Rose, testified in substance and effect as follows:

"That she married George H. Rose in Oklahoma prior to the time he enlisted in the United States Army and that up to the date that he was inducted into the military service, she lived with him continuously as his wife and faithfully performed all the duties of a wife, and that when he was inducted into the military service, she remained in Oklahoma at the place of their residence and looked

after the family affairs and their joint interests and industry and the household of herself and her husband. That she knitted him various articles to be used in military life and sent them to him in camp. That she wrote him letters and received letters from him while he was in camp, continuously from the date he was inducted into the service up to the time of his death. That she sent him boxes of candy and other eatables. That at the time of his sudden death, she was preparing to visit him at his camp, which was requested of her by her said husband."

This last-mentioned agreement is also signed by counsel for the respective parties, but does not bear the approval and signature of the trial judge. Article 2243, R. S., requires that the statement of facts be submitted to the judge "who shall, if he finds it correct, approve and sign it."

■ The consideration and approval of a statement of facts is a judicial act. Stephenson v. Nichols (Tex. Com. App.) 286 S. W. 197; Gray v. Frontroy, 40 Tex. Civ. App. 302, 89 S. W. 1090.

■ The statutory provisions requiring such approval and signature by the trial judge are mandatory (Rea v. Fields [Tex. Civ. App.] 172 S. W. 191), essential to its validity, and omission thereof precludes consideration of the statement. Johnson v. Blount, 48 Tex. 38; McCaskey Register Co. v. Mann (Tex. Civ. App.) 283 S. W. 544; Love v. Spencer (Tex. Civ. App.) 273 S. W. 883; Argo v. Gulf, C. & S. F. Railway Co. (Tex. Civ. App.) 265 S. W. 1065; Texas E. Ry. Co. v. Gonzales (Tex. Civ. App.) 211 S. W. 347; Texas P. C. Co. v. Lumparoff (Tex. Civ. App.) 204 S. W. 366; Lingo Lumber Co. v. Garvin (Tex. Civ. App.) 181 S. W. 561; San Antonio, U. & G. Ry. Co. v. Yarbrough (Tex. Civ. App.) 179 S. W. 523; Rea v. Fields (Tex. Civ. App.) 172 S. W. 191; Rivers v. Campbell, 51 Tex. Civ. App. 103, 111 S. W. 190; Rice v. Reese (Tex. Civ. App.) 110 S. W. 502; Motl v. Stephens, 49 Tex. Civ. App. 8, 108 S. W. 1018; Brown v. Orange County, 48 Tex. Civ. App. 470, 107 S. W. 607. And this is true, though it is agreed to and signed by counsel for all parties. Dickey's Estate v. Houston, etc. (Tex. Civ. App.) 300 S. W. 250; Goodner Wholesale Grocery Co. v. People's, etc. (Tex. Civ. App.) 283 S. W. 1092; Magee v. Magee (Tex. Civ. App.) 272 S. W. 252; Amonette v. Taylor (Tex. Civ. App.) 244 S. W. 238, 239; First Nat. Bank v. Henwood (Tex. Civ. App.) 183 S. W. 5; and many other cases which might be cited.

■ The statement of facts in this case is not signed by the trial judge, and it cannot properly be considered. In the absence of such a statement, it must be assumed by this court that the evidence as to the law of Oklahoma and other pertinent evidence adduced upon the trial supports the judgment rendered. This ruling necessitates affirmance, but this court is always reluctant to dispose of an appeal upon technical grounds, and for that reason we have read the agreements of counsel above referred to and are of the opinion that, if the facts were properly before us for consideration, the judgment should be nevertheless affirmed.

■ Plaintiff in error asserts that under and by force of the federal statutes the fund is the separate and exclusive estate of the deceased soldier, and one-half thereof passed to the mother through whom plaintiff in error claims as assignee of the daughters and heirs of the deceased mother.

But there is nothing in the acts of Congress cited by plaintiff in error which deal with that subject, and it is clear that under Singleton v. Cheek, supra, the question is controlled by the law of Oklahoma.

The defendant in error, as the surviving wife, under the law of Oklahoma, is entitled to all of the fund in controversy if it can be considered as property "acquired by the joint industry of husband and wife." (St. 1931, § 1617).

The premiums upon the policy were paid by deductions made from the soldier's pay. The wife stayed at their home, looked after the family affairs, their joint interests, and the household, knitted for the soldier and sent him eatables, all of which is more fully shown in the above quotation from the second agreement signed by counsel.

Under the rulings of the Oklahoma courts, we think that clearly the fund in controversy is to be considered as "acquired by the joint industry of husband and wife," and all of the estate was properly awarded to the defendant in error. In re Stone's Estate, 86 Okl. 33, 206 P. 246, 248; Flowers v. Flowers, 117 Okl. 209, 245 P. 622.

In construing the phrase "joint industry" in the Stone Case, the court said: "We think it has but one interpretation, that is, the industry of a husband and wife, each in his or her recognized sphere of marital activity, and that an attempt to force the interpretation asked by counsel for plaintiff in error 'that the industry or labor must be identical and in the same course of employment and endeavor' would be to circumvent and abort the natural and socially contemplated marriage relation."

In this connection we also refer to United States v. Robinson (C. C. A.) 40 F.(2d) 14, where the court held that the proceeds of a war risk insurance policy were not the separate estate of the insured, but community property under the Louisiana law.

Affirmed.