KEY WESTERN LIFE INSURANCE COMPANY, Appellant
V.
STATE BOARD OF INSURANCE ET AL, Appellees

No. A-8018. Delivered October 3, 1961
Rehearing Denied November 29, 1961
350 S.W. 2d 839

12

STEAKLEY, Judge, not sitting. JUSTICE GRIFFIN dissenting.

*Joe S. Moore, Graves, Dougherty & Gee,* Austin, for appellant.

*Will Wilson,* Atty. Gen., *Fred B. Werkenthin, Ray V. Loftin, Jr.,* Asst. Attys. Gen.; Austin, for appellees.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is a direct appeal from a decision of the District Court of Travis County affirming an action of the Commissioner of Insurance and the State Board of Insurance. The appeal is authorized by Section 3b of Article 5 of the Texas Constitution; Article 1738a, Vernon's Civil Statutes, and Rule 499a, Texas Rules of Civil Procedure.

Appellant is a life insurance company with home offices in Abilene. Appellant's Policy Form Pic No. 1 was approved by the Commissioner of Insurance on August 27, 1957, in accordance with the provisions of Article 3.42 of the Insurance Code, and appellant immediately began offering the policy to the public.

In March, 1958, the Commissioner of Insurance initiated a series of hearings and inquiries regarding Policy Form Pic No. 1 which lasted until March 19, 1959, when the Commissioner withdrew approval of the policy form in Office Order 3675. The Commissioner gave several reasons for his action, including: that the premium charged was exceedingly high for the benefits provided in the contract and can be justified only by promising high returns from the investments provided for in Option 2, infra; in view of certain policy provisions and the evidence and testimony presented at the public hearing, the Commissioner was of the opinion that the policy form contained provisions which "encouraged misrepresentation", and were "unjust, unfair, inequitable, misleading, deceptive, or contrary to law and the public policy of this state". Furthermore, the Commissioner found that the policy form violates Rule 20 of the Board's Official Order No. 957, dated May 26, 1958; the policy form is not a participating insurance policy authorized by the laws of this state; a "Guaranteed Interim Endowment Option" obligated Key Western to engage in the investment, trust, banking, or other similar business on behalf of the policyholders, and the company was acting outside its charter powers; "the Guaranteed Interim Endowment" provided by the policy was in reality the return of a portion of the premium paid. In view of all this, the Commissioner found that appellant's Policy Form Pic No. 1, "By its very terms and provisions, and within the written contract itself, encourages misrepresentation, is unjust, unfair, inequitable, deceptive and contrary to the public policy of this state, and is contrary to Rule 20 of Official Board Order No. 957 of the State Board of Insurance, and Article 21.21, Texas Insurance Code, and obligates Key Western Life Insurance Company to engage in a business and function beyond its charter powers." The Commissioner then

found that "these findings and conclusions, taken separately or together, subject the entire policy to disapproval under the provisions of Section (f)[1] of Article 3.42, Texas Insurance Code. The Commissioner specifically finds that each of the separate conclusions is sufficient for disapproval of the policy under Article 3.42."

This order was affirmed by the State Board of Insurance Order No. 1557, dated March 28, 1959. On March 31, 1959, appellant timely filed this suit in the 98th District Court of Travis County to have reviewed and set aside the action of the Commissioner of Insurance and the State Board of Insurance. The administrative order was attacked on grounds which included both a challenge of the constitutionality of the statute under which the action was taken (Article 3.42 of the Insurance Code) and assertions that the order withdrawing approval of the policy form was invalid for other than constitutional reasons. A permanent injunction was sought. After a trial before the court without a jury, judgment was entered denying all relief sought by plaintiff, the court reciting in its judgment "that the orders complained of are in all things supported by substantial evidence". This direct appeal followed.

Policy Form Pic No. 1 embodies a plan offered by Key Western in which insurance benefits and investment opportunities are offered in one policy. Some agents of Key Western were equipped with an audio-visual kit which presented the policy provisions in graphic form with discussions of the value of the policy as an investment set out in optimistic terms, to say the least. An alternative oral presentation was substantially the same. All policyholders, regardless of age, have the same program which features the same cost and offers the same benefits to all policyholders. All policyholders pay $365.00 per year—("a dollar a day").

Policy Form Pic No. 1 contains five "benefits" provided by the policy; three are designated as "Death Benefits", and two as "Endowment Benefits". The death benefits at age 35 are payments to the beneficiary in the following amounts: (A) $7,500.00 payable on death of the insured; (B) $2,000.00 at end

1. The pertinent part of Article 3.42 is Section (f) as follows:

"(f) The Board of Insurance Commissioners shall forthwith disapprove any such form, or withdraw any previous approval thereto if, and only if,

"(1) It is in any respect in violation of or does not comply with this Code.

"(2) It contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive or contrary to law or to the public policy of this State.

"(3) It has any title, heading or other indication of its provisions which is misleading.

of 15 years from the date of insurance, and (C) $100.00 on each contract anniversary date following the death of the insured. The returns characterized as "endowment benefits" are payable to the insured, if living, and are characterized by the contract as: (A) a "guaranteed annual interim endowment" whereby the company promises to pay $50.00 when the first year's premiums have been paid; or (B) a "maturity endowment" whereby Key Western promises to pay a single payment of $2,000.00 on the maturity date of the contract. Most, if not all, policyholders have elected (A) above. Under this "guaranteed annual interim endowment" the policy provides that "the person controlling this contract may elect in writing on forms satisfactory to the Company to have the proceeds thereof applied according to one of the following options:

"1. Toward payment of the Annual Premium due if the balance of such premium is paid.

"2. May authorize the Company to transmit the proceeds thereof with reasonable promptness to a registered or authorized security dealer, or to the agent of the underwriter of a mutual fund designated by the person controlling this Contract, to purchase shares or fractional shares or both at the current offering price for the account of the Insured in any mutual fund which the person controlling this Contract may designate and which is registered in the state of the Insured's residence."

According to the evidence, no policyholder has ever exercised Option 1. Option 2 is at the heart of this case. The actuary who designed the policy testified that Option 2 is what makes the Guaranteed Annual Interim Endowment "attractive"; that he doubted whether the company could sell the policy to any extent without Option 2; and that the policy was "designed to be sold on the merits of (Option 2)". Since comparable insurance benefits can be obtained for approximately $200.00, policyholders electing Option 2 in effect pay the company a fee of $115.00 the first year and $65.00 per year thereafter to simply mail the policyholder's "guaranteed annual interim endowment" ($50.00 the first year, $100.00 in subsequent years), to the investment company.

■ Among other points presented, the appellant contends that appeals to the District Court from orders of the State Board of Insurance and the Commissioner of Insurance are to be determined by the preponderance of the evidence rule in a trial de novo of the issues heard and decided by the Board rather than being

determined by the substantial evidence rule as was done in this case. We have concluded to sustain this point under the facts of this case. Such action requires that the judgment of the trial court be reversed and the cause remanded to that court for a new trial. Before disposing of this point, however, we shall pass upon the points which challenge the authority of the State Board of Insurance and the Commissioner to withdraw approval of the policy form issued by the appellant.

■ Appellant's first point of error is that the provision of Article 3.42(c)[2] of the Insurance Code which authorizes the Board of Insurance Commissioners to withdraw approval of a policy form "at any time" is unconstitutional. Appellant insists that since the power to withdraw approval is not mentioned in the title of the 1957 amendment to Article 3.42, then Article III, Section 35, of the Texas Constitution has been violated.[3]

The title of Senate Bill 438 (55th Legislature, Regular Session, Acts of 1957, Ch. 501, p. 1463), by which Article 3.42 was amended, is as follows:

"An Act to amend Articles 3.42 and 3.43 of the Insurance Code (Acts 1951, 52nd Legislature, Chapter 491, as amended) relating to the filing with and approval by the Board of Insurance Commissioners of all policy forms, endorsements, and riders issued by any life, accident, accident and health or hospitalization insurance company, doing business in this state; prescribing the method of filing and providing for its approval within thirty days unless disapproved or approved within such time by written order of the Board; providing for specific grounds for disapproval; providing for judicial review of any such orders; repealing all laws in conflict herewith, providing

2. "(c) Every such filing hereby required shall be made not less than thirty days in advance of any such issuance, delivery or use. At the expiration of thirty days the form so filed shall be deemed approved by the Board of Insurance Commissioners unless prior thereto it has been affirmatively approved or disapproved by the written order of said Board. The Board of Insurance Commissioners may extend by not more than an additional thirty days the period within which it may so affirmatively approve or disapprove any such form, by giving notice of such extension before expiration of the initial 15-day period and at the expiration of any such extended period, and in the absence of such prior affirmative approval or disapproval, any such form shall be deemed approved. The Board of Insurance Commissioners may withdraw any such approval at any time. Approval of any such form by such Board shall constitute a waiver of any unexpired portion of the waiting period, or periods, herein provided."

3. "Sec. 35. No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

for a severability and saving clause; and declaring an emergency."

Section 35 helps assure that our legislators will not approve legislation containing unnoticed and unwanted provisions, even though in the press and din of legislative affairs it is not always possible for them to examine all the parts of each proposed bill. Holman v. Cowden & Sutherland, 158 S.W. 571, wr. ref. Gulf Insurance Co. v. James, 143 Texas 424, 185 S.W. 2d 966. Appellant maintains that the above title "descends into details, purporting to reveal the substance of the changes wrought by the amendment, but gives no hint of other changes incorporated in the body of the bill." Appellant cites cases which deal with various ways in which Section 35 may be violated, including: new and independent subjects in an amendatory bill; captions which conceal the true purpose of a statute or do not reasonably apprise the legislator of the scope of the bill so as to prevent fraud or surprise; and provisions in the caption having no relevancy to the principal object of the Act. See Arnold v. Leonard, 114 Texas 535, 273 S.W. 799; Ward Cattle & Pasture Co. v. Carpenter, 109 Texas 105, 200 S.W. 521; Board of Water Engineers v. City of San Antonio, 155 Texas 111, 283 S.W. 2d 722; Hamilton v. St. Louis, S. F. & T. Ry. Co., 115 Texas 455, 283 S.W. 485. However, the present case is more closely analogous to Board of Ins. Com. v. Sproles Motor Freight Lines, Texas Civ. App., 94 S.W. 2d 769, wr. ref. There the Court of Civil Appeals considered an attack on a statute giving the then Board of Insurance Commissioners the authority to fix premium rates for automobile insurance. The title of that Act (Chapter 253, Acts 40th Legislature, 1927) reads: "An Act to authorize the Commissioner of Insurance of the State of Texas to fix the rate of automobile insurance, providing a penalty for violation of the provisions thereof, and declaring an emergency." The Act itself provided, among other things, that "the Commissioner may withdraw approval of any rate * * * if in his judgment such rate is unjust, unreasonable, or inadequate to provide for the obligations assumed by the insurer." Attack was made, as here, that the statute violated Article 3, Section 35, of the Constitution, because, among other reasons, "its title does not contain the subject matter relative thereto." The principal objection was that there was no provision in the title authorizing the Board to change the rates after once having approved them. The court considered the appropriate requirements of a title, and held "the subject of the proposed legislation is sufficiently stated in the title to the Act." Faced with a similar problem, we hold that the title of Article 3.42, supra, meets the constitutional requirements.

■ Next, appellant contends that the Commissioner erred in disapproving Option 2 because the Commissioner's interpretation of Article 3.42(b) was too literal. With this contention we do not agree. Article 3.42(b) is as follows:

"No application form which is required to be or is attached to the policy, contract or certificate, and no rider ·or endorsement to be attached to, printed upon or used in connection with any policy, contract, or certificate described in Paragraph (a) of this Article shall be delivered, issued or used in this state by any insurer described in paragraph (a) of this Article unless the form of said application, rider or endorsement has been filed with the Board of Insurance Commissioners and approved by said Board as provided in Paragraph (c) of this Article. *Provided, however, that this Article shall not apply to riders or endorsements which relate to the manner of distribution of benefits or to the reservation of rights and benefits under such policies, contracts and certificates, and which are used at the request of the holder of the policy, contract or certificate."* (Emphasis added.)

The Commissioner obviously has not viewed Option 2, supra, as a "rider or endorsement" within the meaning of the above Article, but rather considers Option 2 a part of the policy itself. Appellant argues that the same result achieved by Option 2 could have been achieved by the policyholder executing an assignment to a securities dealer, or the same provisions could have been attached to a separate piece of paper and would then have been without the control of the Commissioner. The option is neither a rider nor an endorsement in the literal sense, and the Commissioner chose to interpret the statute in the literal sense. The Commissioner did not err in so doing. The provision was actually, literally, and physically a part of the policy itself. The Commissioner may well have reasoned that the presence of the option in the body of the policy was probably instrumental in obtaining 100 per cent policyholder selection of Option 2 if for no other reason than it lulled the policyholder into acquiescence in the key option by its very physical presence in the body of the policy rather than emphasizing its presence by its being separate and apart as a rider.

■ In its fourth point of error, appellant asserts: "Article 3.42, Texas Insurance Code, is so vague and grants such sweeping powers, unbridled by any standard or guides, that it results in an unconstitutional delegation of authority by the Legislature to the Board of Insurance." Appellant points out that action by the

Board under the "encourages misrepresentation" provision necessarily means "a matter of opinion", citing Railroad Commission v. Shell Oil Company, 139 Texas 66, 161 S.W. 2d 1022:

"* * * It is a well-established principle of constitutional law that any statute or ordinance regulating the conduct of a lawful business or industry and authorizing the granting or withholding of licenses or permits as the designated officials arbitrarily choose, without setting forth any guide or standard to govern such officials in distinguishing between individuals entitled to such permits or licenses and those not so entitled, is unconstitutional and void."

The present case does not fall within the prohibition of the Shell case, supra. We hold that Article 3.42 in this regard is constitutional. The present case is more closely analogous to Jordan v. State Board of Insurance, 160 Texas 506, 334 S.W. 2d 278. That case upheld the standard "not worthy of the public confidence". In upholding such standard, the court cited Administrative Law Treatise, par. 2.03, by Professor Davis, wherein there were given numerous illustrations of phrases employing general terms which have been held sufficient as administrative standards, and we quote therefrom, as follows:

"(T)he standards the Supreme Court (of the United States) has held adequate include 'just and reasonable', 'public interest', 'unreasonable obstruction to navigation', 'reciprocally unequal and unreasonable', 'public convenience, interest or necessity', 'tea of inferior quality', 'unfair methods of competition', 'reasonable variations', 'unduly or unnecessarily complicate the structure' of a holding company system or 'unfairly or inequitably distribute voting power among security holders'."

The standard "encourage misrepresentation" appears equally as definite as the standard "unworthy of the public confidence", as well as the standards cited. The true test is whether the idea embodied in the phrase is reasonably clear. The phrase meets that test.

We come now to a consideration of appellant's contention that appeals to the district court from orders of the State Board of Insurance and the Commissioner of Insurance are to be determined by the preponderance of the evidence rule in a trial de novo and not by the substantial evidence rule. Appellant insists that the judicial review statutes are constitutional, and that the trial court erred in testing the orders complained of by the substantial evi-

dence rule, contrary to the express provisions of the applicable judicial review statutes. The pertinent statutes are:

Article 3.42 (g) provides:

"Appeals from any order of the Board of Insurance Commissioners issued under this Article may be taken to the District Court of Travis County, Texas, in accordance with Article 21.44 of Subchapter F of this Insurance Code, or any amendments thereof."

Article 21.44 of Subchapter F provides, in part, that any party dissatisfied with any decision of the Board of Insurance Commissioners "may file a petition setting forth the particular objections to such decisions" in the District Court of Travis County, Texas.

The statute sets forth a standard of review as follows:

"The action shall not be limited to questions of law and the substantial evidence rule shall not apply, *but such action shall be tried and determined upon a trial de novo to the same extent as now provided for in the case of an appeal from the Justice Court to the County Court.*" (Emphasis added.)

Article 1.04 (f) of the Insurance Code is partly as follows:

"If any insurance company or other party at interest be dissatisfied with any decision, regulation, order, rate, rule, act or administrative ruling adopted by the State Board of Insurance, such dissatisfied company or party at interest after failing to get relief from the State Board of Insurance, may file a petition setting forth the particular objection to such decision, regulation, order, rate, rule, act or administrative ruling, or to either or all of them, in the District Court of Travis County, Texas, and not elsewhere, against the State Board of Insurance as defendant. Said action shall have precedence over all other causes on the docket of different nature. *The action shall not be limited to questions of law and the substantial evidence rule shall not apply, but such action shall be tried and determined upon a trial de novo to the same extent as now provided for in the case of an appeal from the Justice Court to the County Court.*" (Emphasis added.)

It is clear that the district court has not afforded a trial de novo as provided by the above statutes, but to the contrary has

reviewed the Board's ruling according to the "substantial evidence rule" and held that Key Western's attack on the ruling failed. The Board's Order No. 7635 concludes:

"THEREFORE, ALL PREMISES CONSIDERED, it appears to the Commission of Insurance that Policy Form Pic No. 1 of the Key Western Life Insurance Company, by its very terms and provisions, and within the written contract itself, encourages misrepresentation, is unjust, unfair, inequitable, misleading, deceptive and contrary to the public policy of this state, and is contrary to Rule 20 of Official Order No. 957 of the State Board of Insurance, and Article 21.21, Texas Insurance Code, and obligates Key Western Life Insurance Company to engage in a business and function beyond its charter powers. These findings and conclusions, taken separately or together, subject the entire policy to disapproval under the provisions of Article 3.42, Texas Insurance Code. * * *"

The district court by reviewing the ruling of the Board under the substantial evidence rule has in effect found the applicable review statutes in this case to be unconstitutional insofar as they provide for "preponderance of the evidence" review. In other words, the district court has held, in effect, that to afford Key Western a trial de novo, under the preponderance of the evidence rule, the court trespasses on that area of our government reserved to the legislature, thus violating Article 2, Section 1, of the Texas Constitution. We hold that a review by the courts of the action taken by the Board of Insurance under Article 3.42, supra, in this case may constitutionally be had under the "preponderance of the evidence" standard. The district court was without authority to substitute a nonstatutory standard for that prescribed by the statute. Key Western was entitled to a review by trial de novo. Review by trial de novo has all the attributes of an original action in the reviewing court. The trial court must weigh the evidence by the "preponderance of the evidence" standard. Trial de novo has been defined as "A new trial or retrial if no trial whatever had been had in the court below." See Black's Law Dictionary; Ex Parte Morales, Texas Cr. App., 53 S.W. 108. Trial de novo is not an "appeal", but is a new and independent action. See Corporation Commission of Arizona v. Peoples Freight Line, 16 P. 2d 420 (Sup. Ct. Ariz. 1936) ; Investors Syndicate of America v. Hughes, 378 Ill. 413, 38 N.E. 8d 754.

The maximum scope of judicial review that may be provided for the ruling of an administrative agency is a problem that has vexed the courts of this and other jurisdictions numerous times.

There are numerous cases in Texas and other jurisdictions where the courts have applied the substantial evidence rule to the review of administrative decisions where the particular statute involved in those cases apparently called for a complete redetermination of the issue. See for example, Fire Department v. City of Ft. Worth, 147 Texas 505, 217 S.W. 2d 664 (1949); Bradley v. Texas Liquor Control Board, Texas Civ. App., 108 S.W. 2d 300 (1937), no writ history; Jones v. Marsh, 148 Texas 362, 224 S.W. 2d 198 (1949); Appeal of Fredericks, 285 Mich. 262, 280 N.W. 464 (1938); City of Jackson v. McLeod, 199 Miss. 676, 24 So. 2d 319 (1946).

The Texas Constitution provides that the powers of government shall be divided into three distinct departments: Legislative, Executive, and Judicial, and that except in instances expressly permitted by the Constitution, "no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, * * *." Article 2, Sec. 1, Texas Constitution. Under this Section of Article 2 (or similar provisions contained in the constitutions of other states) provisions in Acts of legislatures calling for the review of legislative determinations or executive rulings by a trial de novo in a judicial tribunal have been declared invalid as violative of the constitutional doctrine of separation of powers. A power or authority which cannot be lawfully delegated directly to the judiciary by the Legislature because of the constitutional provision cannot be conferred upon the courts by means of a de novo trial after an administrative hearing. Davis v. City of Lubbock, 160 Texas 38, 326 S.W. 2d 699 (1959); Cromwell v. Jackson, 188 Md. 8, 52 A. 2d 79 (1947); Mississippi Insurance Commission v. Insurance Co. of North America, 203 Miss. 533, 36 So. 2d 165 (1948).

"The criterion used (by the courts in determining the constitutionality of the review statute) is whether the reviewing court is required to exercise a function that is deemed nonjudicial, * * *. The perplexing problem is the determination of what is judicial and what is nonjudicial." 4 Davis, Administrative Law Treatise, Sec. 29.10 (1958). Many definitions of legislative functions and judicial functions have been set forth by various courts. The Supreme Court of the United States stated:

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." Prentis v.

Atlantic Coast Line, 211 U. S. 210, 53 L. Ed., 150, 29 Sup. Ct. 67.

In 73 Corpus Juris Secundum 306, it is said:

"It has been stated that the nature of the final act and the character of the process and operation, rather than the general character of the authority exercised, is determinative. The action of the administrative body or officer is adjudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule-making action, general and future in effect."

These definitions aid us in reaching an answer to the specific question facing this Court: Is the determination that the policy form contains provisions which "encourage misrepresentation or are unjust, unfair, inequitable, * * *" a "judicial function" or a "legislative function"?

Appellee urges that the determination made by the Board in the instant case is a legislative function in which the Board utilizes "legislative discretion". With this contention we do not agree. The instant case is not controlled, as claimed by appellee, by the holding of this Court in the case of Davis v. City of Lubbock, 160 Texas 38, 326 S.W. 2d 699 (1959). Appellee fails to appreciate that there is a distinction between the types of decisions rendered by different administrative agencies. Some agencies perform judicial or quasi-judicial functions; others exercise powers which are essentially legislative. In re: Harmon, 52 Wash. 2d 118, 323 F. 2d 653 (1958).

Article 3.42 (f) and the standard therein expressed are to be distinguished from the statute and applicable standard which were before this Court in the Davis v. City of Lubbock case, supra. In that case this Court held that Section 17 of the Urban Renewal Act which provided for a review by trial de novo of any order or other act of the city or other agency was unconstitutional as a violation of Article 2, Section 1, of the Constitution of Texas. In reaching this conclusion the court said:

"* * * it is quite clear that a decision that it [a particular area] is a slum area under (3) of the definition is a decision of a question of pure public policy."

"A decision or conclusion by the Agency that a particular area is a 'Slum Area' or a 'Blighted Area' is thus made to rest

upon a finding involving *legislative discretion*. A de novo judicial review of *such* a decision would clearly involve the exercise by the courts of nonjudicial powers." (Emphasis added.) 326 S.W. 2d 699, 714.

Section (3) of the definition referred to by the court reads in part: "which is detrimental to the public health, safety, morals or welfare of the city, * * *." Section 4(h), Article 1269-3, Vernon's Annotated Texas Statutes.

Under Article 3.42(f) of the Insurance Code the Board of Insurance Commissioners may disapprove or withdraw previous approval of the policy form:

"* * * *if and only if,*

(1) It is in any respect in violation of or does not comply with this code.

(2) It contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive or contrary to law or to the public policy of this state.

(3) It has any title, heading, or other indication of its provisions which is misleading. (Emphasis added.)

"The Board can exercise only such authority as is conferred upon it by law in clear and unmistakable terms and the same will not be construed as being conferred by implication." Board of Insurance Commissioners v. Guardian Life Ins. Co., 180 S.W. 2d 906 (Comm. of App. 1944). See also Humble Oil & Refining Co. v. Railroad Commission of Texas, 133 Texas 330, 128 S.W. 2d 9; Commercial Standard Ins. Co. v. Board of Insurance Commissioners, Texas Civ. App., 34 S.W. 2d 343, wr. ref. Therefore, the Board in the instant case could exercise no more discretion than the terms of the statute clearly provide, and it appears from a literal reading of the statute that the Board was not to have broad legislative discretion. The Board of Insurance Commissioners is empowered to disapprove a form for certain specific reasons only and may not dictate to the insurance companies the particular form to be used. Its only duty is to determine whether the form of the policy submitted for its approval meets the standards prescribed by the statute. The action of the Board of Insurance Commissioners "is particular and immediate, rather than, as in the case of legislative or rule-making action, general and future in effect".

The dissimilarity between the standard set forth in Article 3.42 (f) and the standard before the Court in the Davis case, supra, is readily apparent. The Board of Insurance Commissioners under Article 3.42 (f) does not make a determination "of a question of pure public policy", as in the Davis case, supra. The Board may disapprove a form "if and only if" it violates the provisions of the statute. Under the provisions of the statute, the State Board of Insurance is also empowered to disapprove or withdraw approval of a policy form if the form is contrary to the public policy of the state. It is to be noted that this particular provision provides no standard by which public policy is to be measured. The absence of a standard or guide to govern the Commissioner of Insurance or the State Board of Insurance in the determination of what type of policy form would be contrary to public policy would leave it to the unbridled discretion of the Commissioner and the Board to disapprove in the first instance or withdraw previous approval of a policy form. This would leave the right to enter into insurance contracts subject to the arbitrary discretion of the Commissioner and the State Board of Insurance. This of itself would render the statute void. See Railroad Commission v. Shell Oil Company, supra. However, if possible, it is the duty of the courts to construe a statute in such a way as to avoid repugnancy to the Constitution. This may be done by holding that the "public policy" of which the statute speaks is defined in the statute itself. It is the right of the public to be free of insurance contracts which contain "provisions which encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive * * *." Thus, the determination made by the Board of Insurance Commissioners under Article 3.42 (f) is clearly a quasi-judicial function. Such determination is reviewable on appeal by a trial de novo under the preponderance of the evidence rule. This is particularly made clear when we consider that the court, the trier of the facts, in determining whether or not the policy "encourages misrepresentation" is not limited to a consideration of the words and phrases of the policy alone, but may consider outside, relevant factors, as herein pointed out, in its evaluation of these words and phrases.

The Supreme Court of Minnesota, in an early case dealing with the problem of determining whether a given function was "legislative" or "judicial", said:

"As a general proposition of law the Legislature cannot delegate legislative powers to the judiciary or require the judges of the various courts of the state to do any acts which are not in their nature judicial. Kilbourn v. Thompson, 103 U.S. 168, 26 L. El. 377, and cases there cited; * * * But it is

not always easy to discover the line which marks the distinction between executive, judicial, and legislative functions, and when duties of an ambiguous character are imposed upon a judicial officer any doubt will be resolved in favor of the validity of the statute, and the powers held to be judicial. Foreman v. Board Co. Com'rs., 64 Minn. 371, 67 N.W. 207. In many instances the acts which are to be done require the performance of functions, some of which are judicial and others legislative or executive, and these are often so interwoven and connected that they cannot readily be separated and distinguished. When this is the case the court will not attempt to unravel the combination, but will sustain the act against the constitutional objection." State ex rel Patterson v. Bates, 96 Minn. 110, 104 N.W. 709 (1905).

Appellee also relies upon the case of Farmers and Merchants Ins. Co. v. State Board of Ins., Texas Civ. App., 321 S.W. 2d 354, wr. ref. n.r.e. In that case the Court of Civil Appeals considered a statute which authorized a trial de novo if an appellant were "dissatisfied with any order of the Board respecting its application [for permission to write insurance for less than the maximum rate prescribed by the Board of Insurance]". The court in holding the statute unconstitutional cited the case of Southern Canal Co. v. State Board of Water Engineers, Texas Civ. App., 311 S.W. 2d 938.

The present case is distinguishable from the Farmers and Merchants case. That case involved the question of whether a rate is "inadequate" or "unfairly discriminatory". The determination is whether or not a rate deviation should be granted depends upon a variety of factors listed in the statute.[4] These factors are such as would involve the use of "legislative discretion" or the exercise of "quasi-legislative" power. The Board may deny the application "if it finds the resulting premium would be *inadequate* or *unfairly discriminatory*". Such a determination is a question involving broad legislative discretion, and not susceptible to full redetermination by the judiciary. Therefore, it would appear that although the Farmers case, supra, was correctly decided, it does not govern the disposition of the instant case.

---

4. "In considering any application * * the Board shall give consideration to the factors applied by insurers or rating organizations generally used by such insurers or rating organizations in determining the bases for rates; the financial condition of the insurer; the method of operation and expenses of such insurer; the loss experience of the insurer, past and prospective, including where pertinent the conflagration and catastrophe hazards, if any, both within and without this State; to all factors reasonably related to the kind of insurance involved to a reasonable margin for an underwriting profits for the insurer, and, in the case of participating insurers, to policyholders' dividends." Art. 5.26, Texas Insurance Code.

Appellee points out numerous problems and difficulties which will be encountered by the courts in attempting to provide a de novo review for this type of administrative decision. This Court in Southern Canal, supra, also emphasized the dire results possibly attendant from such a course of action. With these views this Court is in full accord.

However, the fact that a statute may have mischievous or even disastrous results is not basis for declaring the same to be unconstitutional. "* * * It should perhaps be reiterated that Courts have no concern with the wisdom of legislative acts, but it is our plain duty to give effect to the stated purpose or plan of the Legislature, although to us it may seem ill advised or impracticable. * * *" State Board of Insurance v. Betts, 158 Texas 612, 315 S.W. 2d 279 (1958). See also, Board of Insurance Commissioners v. Guardian Life Ins. Co., 142 Texas 630, 180 S.W. 2d 906 (1944).

We therefore hold that insofar as the trial court held the judicial review statutes unconstitutional as applied to the instant case, it was in error. The function of the Board of Insurance Commissioners under Article 3.42(f) is quasi-judicial, and therefore the courts could properly make the same determination on trial de novo.

■ In view of another trial of the case, we deem it necessary to discuss the points of error raised by appellant pertaining to the relevancy and admission of certain evidence before the Board and the trial court.

Appellant attacks the admission of the premium rates before the Board and contends that the Board has no authority to regulate premium rates. The trial court refused to allow testimony pertaining to the premium rates. We find that the premium rate charged is of evidentiary value in determining whether the policy "encouraged misrepresentation". If the premium rates charged were so high that unreasonably high returns must be promised, this would encourage misrepresentation.

Appellant insists that "If the rate has to be looked into in order to discover the supposed inequity, then it is not the provisions of the policy which cause it but the rate." What appellant fails to recognize is that the rate has an undeniable effect on whether or not provisions of the policy might necessarily have to be misrepresented in order to sell the policy; therefore evidence of the rate charged is relevant in determining if the policy "encourages

misrepresentation" and if introduced in the trial court on retrial, would be admissible. The use of the premium rate charged as circumstantial evidence of whether or not the policy "encourages misrepresentation" is not directly or indirectly an attempt to regulate rates.

Appellant next maintains that the meaning of the policy provisions are clear and unambiguous, and that such provisions, standing alone, do not misrepresent anything. Therefore, appellant reasons that it is error to consider the policy provisions in relation to anything outside the four corners of the policy itself. At this point we again turn our attention to a recurring question in this case. Should the Court and the Board be limited to a consideration of the words and phrases of the policy alone, or may the Court and the Board consider outside, relevant factors in its evaluation of these words and phrases?

In determining what construction is to be placed on the phrase "encourages misrepresentation" contained in Subdivision (2) and the language "If it [the policy] has any * * * other indication of its provisions which is misleading" contained in Subdivision (3) of Article 3.42(f), supra, we are mindful of the following elementary rules of statutory construction summed up in 39 Texas Jurisprudence, at pages 217, 218, and supported by substantial Texas authority:

"Thus it is settled that a statute will be construed with reference to its intended scope, its general purpose, and the ends or objects sought to be attained. * * * Where the statutory language * * * admits of more than one meaning it is to be taken in such a sense as will conform to the scope and intent of the act, and will best or most certainly accomplish its purpose, without doing violence to plain statutory language. Thus where a statute is designed to afford a remedy for existing evils, it should be given such signification as will afford a reasonable remedy. Contrariwise, a construction that is repugnant to the object of the law or that will defeat, thwart or unduly limit its plain purpose, will be avoided if possible."

And see: Ex parte Flake, 67 Crim. Rep. 216, 149 S.W. 146; Crooms v. State, 40 Crim. Rep. 672, 51 S.W. 924, 53 S.W. 882; Magnolia Petroleum Co. v. Walker, 125 Texas 430, 83 S.W. 2d 929 (cert. den. 296 U.S. 623); Wray v. Citizens National Bank (Comm. App.), 288 S.W. 171; Red v. Bounds, (Comm. App.), 63 S.W. 2d 544; Trimmier v. Carlton, 116 Texas 572, 296 S.W. 1070; Highway Comm. of Texas v. Vaughn, 288 S.W. 875, er.

ref.; Adams v. Bida, 83 S.W. 2d 420, rev. on other grounds at 84 S.W. 2d 693; Longoria v. State, 71 S.W. 2d 268; Oliver v. State, 65 Crim. Rep. 150, 144 S.W. 604; Higgins v. Rinker, 47 Texas 393; Shelton v. Wade, 4 Texas 148; Imperial Irrigation Co. v. Jayne, 104 Texas 395, 138 S.W. 575; Texas Co. v. Schriewer, 38 S.W. 2d 141, modified Comm. App., 53 S.W. 2d 774; First Texas State Ins. Co. v. Smalley, 111 Texas 68, 228 S.W. 550; Cannon's Administrator v. Vaughan, 12 Texas 399, Ex Parte Miller, 85 Crim. Rep. 263, 211 S.W. 451.

With this principle before us it becomes evident that the court and the Board would clearly be within their authority in considering all pertinent factors in arriving at their decision, and not just the words of the policy alone. As has been succinctly stated by a Louisiana court in a situation similar to our own:

"* * * While it is true that the Secretary of State, not the Commission, has the responsibility and power to enjoin 'any unfair or deceptive act or practice prohibited', LSA-R.S. 22:1215, we feel that the Commission could properly take notice of the large newspaper advertisements 'informing' the public of State Farm's membership fee plan which in the Commission's opinion were misleading. The insurance Code is an integrated whole. The Commission is not required to leave the stable door unlocked until the horse is stolen." State Farm Mutual Automobile Insurance Co. v. Louisiana Insurance Rating Commission, et al, 79 So. 2d 888 (Ct. of App. of La.).

Appellant contends that the Board and the Court must look only to the form of the policy. We do not agree. We hold that the Court will be justfied in considering outside factors in its determination. The Board and the Court must have the power, in approving or disapproving a policy, to consider not only the terms of the policy form itself, but also the fact that the policy will be used in an undesirable scheme. Our conclusion does not give the Insurance Board unbridled opportunities to abuse its powers. The Legislature has carefully provided for appeal from orders of the Board to guard against such abuse. This present action is an excellent example of the extent to which such an appeal can be perfected.

Finally, appellant contends, "The trial court erred in receiving in evidence, and considering as a basis for upholding the orders in question, testimony and exhibits concerning the means by which the policy was sold or advertised for sale, because advertising materials or methods may not be utilized directly or

indirectly as a ground for disapproval of, or withdrawal of approval of, appellant's policy form." Our answer to that contention is that it would be unreasonable to suppose that the Commissioner or the trial court must disregard facts which have a material relation to the matters under their inquiry, especially where, as here, the advertising was directly welded to the provision in question, Option 2, supra. Appellant urges that it was not the intent of the Legislature that deceptive advertising practices be a ground for disapproval of the policy form. With this we agree, but advertising practices may be relevant in determining if the statutory grounds exist. A consideration of the policy form aside from the advertising accompanying it would be to view the policy as if "in a vacuum", as appellee has phrased it. We hold that the trial court may view policy provisions and advertising practices together to determine the acceptability of the policy itself. This is by no means an attempt by the Commissioner or the Court to regulate advertising.

The judgment of the district court is reversed and the case is remanded to that court with directions that any subsequent trial proceed in a manner not inconsistent with this opinion.

Opinion delivered October 3, 1961.

MR. JUSTICE GREENHILL, joined by JUSTICE CULVER, concurring.

I agree that the trial de novo provisions of the statute are constitutional. But I disagree that the policy itself should be struck down because of oral representations or misrepresentations made by agents in connection with the selling of the policy. Any policy of insurance is capable of being misrepresented. And as I read it, this policy itself contains nothing which is illegal, which of itself is misleading or fraudulent, or which peculiarly lends itself to misrepresentation.

The Legislature has clothed the Board of Insurance with broad power in Article 21.21 of the Insurance Code to deal with and stop misrepresentations and false advertising made in connection with the sale of insurance policies. The Board is also given the power to call before it any person who is accused of deceptive acts or practices or unfair methods of competition in the business of insurance. It has authority to issue cease and desist orders to stop the objectionable practices. To me, this would have been the proper approach to the objectionable practices in this case.

As originally introduced in the Legislature, Senate Bill 438, which became Article 3.42 of the Insurance Code, authorized the Board to disapprove a policy form "(d) If the purchase of such policy is being solicited by deceptive advertising." This authority was deleted before enactment. This is evidence of legislative intent that misleading advertising and practices outside of the policy should be separately dealt with, and that the policy should be judged by its own terms.

I agree that misleading and deceptive practices should be stopped. I disagree only in the manner in which they should be stopped.

MR. JUSTICE GRIFFIN dissenting.

I cannot agree with the majority opinion and I therefore respectfully dissent.

I dissent from the holding that the matter of the content and form of insurance policy provisions can be tried de novo. The content and form of insurance policies most certainly are administrative matters and not judicial matters. In the first instance, to permit the courts to write insurance policies would, in my opinion, lead to interminable confusion and great lack of uniformity. Such procedure would lead to the approval of one form of policy for one company, and approval of another and different form for another company.

Opinion delivered October 3, 1961.