**T. B. CORDER et al., Appellants,**

**v.**

**STATE WATER POLLUTION CONTROL BOARD of the State of Texas et al., Appellees.**

**No. 11301.**

Court of Civil Appeals of Texas.

Austin.

May 19, 1965.

Rehearing Denied June 9, 1965.

Kucera, Lay & Lightfoot, Bennett Lay, Houston, for appellants.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, 1st Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., J. S. Bracewell, F. R. Booth, George C. Black, Jr., Asst. Attys. Gen., Austin, Cyril J. Smith, Houston, Gibson, Spence & Gibson, Robert Spence, Austin, for appellees.

ARCHER, Chief Justice.

This is a suit brought under Section 7 of Article 7621d of the Revised Civil Statutes of Texas, to set aside the action of the State Water Pollution Control Board in granting a permit to Harris County Water Control and Improvement District No. 84, to discharge sewage effluent from a sewage treatment plant into Fresh Water Bayou, a stream which is dry nearly all of the year, whose course is adjacent to or in the immediate vicinity of plaintiffs' property. Such permit was issued April 27, 1964, effective as of March 5, 1964. Plaintiffs timely filed suit in the 53rd Judicial District Court of Travis County, Texas, on March 25, 1964 to set aside such permit.

Trial was before the Court without a jury and, over plaintiffs' objection, under the substantial evidence rule. Judgment was rendered that plaintiffs take nothing by their suit.

The appeal is founded on seven points assigned as error by the trial court in holding that this case be tried under the substantial evidence rule, and the holding that appellants take nothing is so against the

great weight and overwhelming preponderance of the evidence as to be unjust, in holding that the permit granted by the State Water Pollution Control Board was reasonably supported by substantial evidence and that the permit is unreasonable and will cause damages to adjacent property and in the immediate vicinity of the stream into which the discharge is made in an amount of $645,959.00, that the Board's action was arbitrary, that the Court erred in admitting into evidence certain exhibits and the testimony of witness V. K. Berkstresser in connection therewith, and finally in sustaining the action of the Board in granting the permit.

The Texas Water Pollution Control Board was created by Acts 57th Leg., 1961, 1st C.S., Ch. 42, p. 156, codified as Article 7621d, Vernon's Ann.Civil Statutes.

Harris County Water Control and Improvement District No. 84 is a political subdivision of the State of Texas established pursuant to Article XVI, Section 59, Texas Constitution, Vernon's Ann.St. The district is authorized to provide a system for municipal water supply and disposal of sewage.

Public hearings were held by the Board relative to the desire of the District to discharge an average of 480,000 gallons daily of treated effluent and considered as places of discharge (1) into a proposed Harris County Flood Control ditch, thence to Bear Lake, and thence to the San Jacinto River; (2) Plant to be located on Lot 58 of Old River Acres near Bear Bayou Drive and Fresh Water Bayou south of Bear Bayou Drive approximately 4000 feet East of Sheldon Road in the Peter Duncan Survey, A–232, with discharge into Fresh Water Bayou, thence to Old River. Another plant location and place of discharge was considered.

Objection and protest developed against all three proposed locations. The Board ultimately granted a permit to the District to discharge treated effluent at the place described in Proposal No. 2. Plant to be located on Lot 58 of Old River Acres near Bayou Drive and Fresh Water Bayou south of Bear Bayou Drive approximately 4000 feet East of Sheldon Road in the Peter Duncan Survey, A–232, with discharge into Fresh Water Bayou, thence to Old River.

The Permit in full reads:

"PERMIT
NO. 10558

### TEXAS WATER POLLUTION CONTROL BOARD
#### 1100 WEST 49th STREET
#### AUSTIN 5, TEXAS

PERMIT to dispose of wastes under
provisions of Article 7621d,
Vernon's Civil Statutes

I. Name of Permittee

 1. Name Harris County Water Control & Improvement District No. 84

 2. Address 1330 Sheldon Road

 3. City Channelview, Texas

II. Type of Permit

 Regular X Amended 

III. Nature of Business Producing Waste

 Municipal sewerage system

IV. General Description and Location of Waste Disposal System

Plant Description: Primary clarifier, primary settling tank, first and second stage biological filters, final clarifier, sludge digester, drying beds, and chlorine detention well.

Plant Location: On Lot 58 of Old River Acres near Bear Bayou Drive and Fresh Water Bayou, Harris County, Texas.

System: To serve Harris County WCID No. 84

V. Conditions of the Permit

1. Character, volume and disposal area(s) or point(s) of discharge authorized under this Permit. The conditions on the reverse side are a part of this Permit and apply for all purposes.

CHARACTER: Municipal sewage effluent.

VOLUME: Not to exceed an average of 480,000 gallons per day.

QUALITY: Not to exceed an average of 20 ppm of B.O.D. nor an average of 20 ppm of Total Suspended Solids and continuously chlorinated to a residual of not less than 1.0 ppm of chlorine after 20 minutes time of contact.

POINT OF DISCHARGE: Into Fresh Water Bayou south of Bear Bayou Drive approximately 4000 feet east of Sheldon Road in the Peter J. Duncan Survey, A–232, thus to Old River.

2. Special Provisions
None

3. This permit becomes effective March 5, 1964 and is valid until amended or revoked by the Board.

ISSUED this 27th day of April, 1964.

/s/ D. F. Smallhorst
Executive Secretary

/s/ Joe D. Carter
For the Board "

—————◆—————

Appellants appealed pursuant to the provisions of Article 7621d, Section 7, which reads in part:

" * * * It is the intent of the Legislature that such trial shall be strictly de novo and that the decision in each case shall be made independently of any finding, express or implied, by the Board, and upon a preponderance of the evidence adduced at such trial and entirely free of the so-called 'substantial evidence' rule enunciated in some cases by some appellate courts in this State in respect to orders of other ad-

ministrative or quasi-judicial agencies. Appeals from decisions of the District Court shall be as in other civil cases."

■ We believe that appeals pursuant to Section 7 of Article 7621d shall be tried under the substantial evidence rule.

In Southern Canal v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619, our Supreme Court held that "The statute providing that in suits to review orders of State Board of Water Engineers trial should be de novo and decision made upon preponderance of the evidence is void * * *."

■ In the absence of constitutional amendment, re-enactment of an unconstitutional statute does not render the statute constitutional. City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788; Brazosport Savings & Loan Association v. American Savings & Loan Association, 161 Tex. 543, 342 S.W.2d 747.

Key Western Life Insurance Co. v. State Board of Insurance, 163 Tex. 11, 350 S.W. 2d 839, cited as authority for trial de novo, recognizes the distinction between judicial and non-judicial function in stating:

"A power or authority which cannot be lawfully delegated directly to the judiciary by the Legislature because of the constitutional provision (Article II, Section I) cannot be conferred upon the courts by means of a de novo trial after an administrative hearing."

In Halsell v. Texas Water Commission, 380 S.W.2d 1, er. ref., n. r. e., this Court discussed the application of the substantial evidence rule.

The question of the constitutionality of a complete trial de novo was presented in Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699. Texas State Board of Examiners in Optometry v. Carp, 388 S.W.2d 409, Supreme Court.

In the instant case the appeal is from an order granting the State permission to discharge waste into public waters. It is prospective in nature and any damage that occurs to the landowner must wait until plant operation begins.

Article 7621d reserves the right to these appellants to bring an action for damages or to enjoin nuisance created, which reads:

"This Act shall not in any way affect the right of any person to pursue all legal and equitable remedies available to abate pollution and other nuisances or recover damages therefor, or both. Boyd v. City of San Angelo, Tex.Civ. App., 290 S.W. 833, er. ref.

■ The license granting powers of an administrative agency are legislative in nature. Kost v. Texas Real Estate Commission, Tex.Civ.App., 359 S.W.2d 306, er. ref.

The right to appeal must be limited to whether or not the order in question is reasonably supported by substantial evidence.

■ We believe that the trial court correctly held that the permit was reasonably supported by substantial evidence.

The record in this cause is long, the statement of facts contains 452 pages, and there are many exhibits consisting of maps of the area and photographs of houses and improvements, and we have read the entire record and given careful consideration to such evidence.

Appellants' second, third, fourth and even the fifth point are directed to the issue of substantial evidence. In these four points, appellants contend (1) the sewage treatment plant and the sewage effluent discharge point will be located outside the district's boundary on an intermittent stream flowing through a populated area; (2) the discharge of treated sewage effluent will constitute a health hazard; (3) location of the treatment plant and discharge point will damage adjacent property; and (4) there are other more desirable sites for the treatment plant and discharge plant than the one permitted, and contend that

there is no substantial evidence to the contrary.

The record reflects that the permitted treatment plant and the permitted treated sewage effluent points are located outside the boundaries of appellee district.

█ The location of the treatment plant is not an issue in this suit, and the permit from which this appeal lies does not mention the location. Except to the extent that the discharge point could control location of the treatment plant, the Pollution Control Board has no jurisdiction and the standards for constructing the treatment plant were not within the jurisdiction of said Board, or the scope of its action in granting the permit, such being within the province of the State Health Department (Article 4477–1, Section 12), and the Texas Water Commission (Article 7880–139).

However the location of the plant and degree of treatment at the plant are interwoven with the problem of disposal of sewage effluent. The Pollution Control Board is composed of representatives from the State Health Board, Texas Water Commission and the Parks and Wildlife Commission.

The first application by the district was considered by the Board on August 22, 1963, and was on Proposal No. 1 to discharge into Bear Lake. Protests were made and at a meeting in November 1963, Proposal No. 1 was denied without prejudice. Later in November the District supplemented its original application by adding two additional proposed points of discharge. No. 2 was the Fresh Water Bayou route subsequently granted. Proposal No. 3 was to discharge into Carpenter's Bayou and a public hearing was had on the entire subject beginning January 30, 1964. Protests were made and on April 27, 1964 the permit to discharge treated sewage effluent into Fresh Water Bayou was granted to become effective on March 5, 1964.

The course of Fresh Water Bayou, a stream which has a natural flow only intermittently less than a month out of the year, is through a high class residential area.

Dr. W. A. Quebedeaux, a chemical engineer, qualifying as an expert, testified at length, described the three proposed discharge sites and the area as a whole, and stated that from a health standpoint the site of discharge into the San Jacinto River would be the most desirable; the next, Carpenters Bayou, and the least desirable would be Fresh Water Bayou, the site selected by the Board. The witness detailed areas as to residential use and business use, with many pictures.

The witness stated that he was on the plaintiffs' side but was appearing in the interest of the people in Harris County; that Harris County had not made an appearance in the suit challenging the validity of the permit.

The witness testified that there would be an odor problem in the use of the Fresh Water Bayou. That the permit restricts the operators as to the quantity of the liquid discharged but there would be settling of solids, that the bayou is winding, with brush, small trees and dry rocks, and potholes in it when it starts drying up, and that the use of chemicals will be necessary to control the odors.

The witness testified as to the advantages of the other two proposals as compared to the permitted location, and again stated that Proposal No. 2 was the most objectionable of all proposals, and estimated the costs of concrete lines and the size necessary to carry the discharge effluent up to 480,000 gallons.

A. A. Mosely, an insurance and real estate broker, testified as to the values of real estate in the area of Fresh Water Bayou, setting out values at the time of the hearing and the respective values of the properties after the discharge of the effluent and that the reduction would be over 50% and an overall damage of $645,959.00.

Dr. Quebedeaux was recalled for further cross-examination by the Board and testified to substantially the same tenor and effect as previously.

The plaintiff, appellant herein, called T. B. Corder who testified as to improvements in the Water District and that there were only a few residents in the District.

Five other witnesses testified to substantially all the same conditions and to the effect as to Fresh Water Bayou being a dry stream and as to pictures along the Bayou.

The defendant, appellee herein, called as witness E. W. Ogden, who testified as to the creation of the Water District to have a water and sewage disposal plant, and its purposes.

Hugh Yantis, an employee of the State Health Department, assigned to work as the Chief Engineer of the Water Pollution Control Board and as recorder, testified as to hearings by the Board, identifying the applications and the minutes as well as protests, letters, etc., and that many people appeared in opposition.

There was introduced a map of the area showing the outline of the District No. 84, the proposed location of the plant, the routes of Proposals Nos. 1 and 3, and Route Proposal No. 2 selected by the Board, but we are unable and see no real need to insert such map herein. The location of the treatment plant is not an issue in this case.

Mr. Yantis described the plant as follows:

"Q Mr. Yantis, do you know of any other treatment plant in this area that the Board has permitted that has the requirements and the capacity and the ability to treat this effluent comparable to this particular proposed system?

A Yes. Now, this answer has got to be qualified somewhat, and I might state at this point—my routine duties do not require me personally to do any of this review of plans and specifications. This is done by other engineers within the framework of the State Health Department's ordinary activities. I do keep fully aware of what they are doing, but I do not personally do it.

Any plant approved by the State Health Department can produce a satisfactory effluent as good as this plant would do. There are additional safety features which have been put into this plant when trouble comes, which are not in plants that were built before, and I am not sure that they are in any plant which has been recently approved. This I do not have personal knowledge of. This was the first plant, though, where the need for additional safeguards became evident. We are developing, and the State Department of Health is developing, on the line of requiring either these or similar requirements on future plants, but I do not know how far they have gone."

V. K. Berkstresser, a Consulting Engineer in a municipal field and a Registered Professional Engineer, set out his qualifications, work done and experience in Harris County in the water and sewage field for many districts, designing such. The witness identified a number of pictures of the water in Fresh Water Bayou below the effluent outlet of the sewage treatment plant above Martin's Lake at the end of Pine Street, and other sides along the Bayou.

The witness stated that there is no flowing water in Proposal No. 1, but is a drainage ditch, and described Bear Lake.

Mr. Berkstresser testified that the odor problem will be non-existent, and that in two other treatment plants designed by him there has been no odor problem, and the present plant is an improvement over the previous ones; if there is some odor, the prevailing winds are such that the odor

will not affect appellants' property, and further stated:

"Q * * * In your opinion, is the capacity of the stream and the fall of the stream from the treatment plant to Martin's Pond adequate and satisfactory to carry off the treated effluent rapidly and without causing any problem from the standpoint of health or from the standpoint of odor?

A Yes, sir.

Q All right, sir. Now, then, turning to Martin's Pond. Now, with the pond being in existence, state whether or not this will have a tendency to trap the effluent that is running through it and cause some conditions there that would not occur if the pond were not there.

A Yes. As the effluent is coming down the stream with the velocity and as it hits the pond and goes into a larger area, the velocity will slow down. The pond will act as a settling tank and, therefore, there will be some natural treatment that takes place in the pond, but the effluent, then, that goes out of the pond would be in better condition than before it come into it. * * *"

Where the railroad crosses Fresh Water Bayou, tidal confluence begins. From the railroad crossing to the Bayou's confluence with Old River is 5,000 feet. There is an existing sewage treatment plant and effluent discharge point on Fresh Water Bayou between the railroad crossing and Old River.

Mr. Berkstresser, when asked what effect the discharge of effluent would have on Fresh Water Bayou, testified as follows:

"A Well, I personally professionally feel that as the stream is normally a dry stream, the growth that takes place, that there is no recreational value under those conditions, and if you had a stream, an effluent stream, flowing down there, that, if anything, it would be better.

Q All right. Now, then, * * *

A You see, the velocity of that stream is fast, and there will be no nitrification and no settling out."

With regard to the existing District 21 situations, the witness Berkstresser stated:

"A Well, after you hit tidewater at the railroad track and down through the existing '21' treatment plant, if any effect, I feel that it would be beneficial, that it would have a tendency of carrying the existing material that would tend to back up there, to carry it on out with the additional flow of water, and as the amount of water increases, why, that help would increase."

There were three other witnesses testifying in support of the plant, but we see no need to further lengthen this opinion.

The trial court saw and heard the witnesses and the maps and exhibits and rendered judgment upholding the order of the Board, and we believe he was justified in doing so.

 We do not believe that the permit issued to Harris County Water Control and Improvement District No. 84 is void because it was issued more than 90 days after receipt of application, as provided in Section 4(b) of Article 7621d, such being only directive. Texas Department of Public Safety v. Dawson, Tex.Civ.App., 360 S.W. 2d 860, n. w. h.

The judgment of the trial court is affirmed.

Affirmed.