TRAVIS COUNTY BAIL BOND BOARD, Appellant,

v.

Frank SMITH, Appellee.

No. 5514.

Court of Civil Appeals of Texas, Waco.

Dec. 11, 1975.

Ned Granger, Philip R. Lerway, Austin, for appellant.

Gibbins & Spivey Associated, Inc., Austin, for appellee.

HALL, Justice.

The take-nothing judgment in question stems from the failure of the appellant to adduce any proof after the trial court ruled contrary to the appellant's contentions, that an appeal from an order of a County Bail Bond Board revoking a license to execute bail bonds is an appeal de novo and is not a review under the substantial evidence rule. We agree with the ruling and affirm the judgment.

Article 2372p–3, Vernon's Tex.Civ.St., is a comprehensive Act controlling the business of executing bail bonds, including the licensing and regulation of bail bondsmen, through County Bail Bond Boards in counties of 150,000 or more population. The appellant, created under this Act, granted a license to the appellee to execute bail bonds in Travis County, then revoked it on the basis of four asserted violations under the Act. The appellee appealed to the District Court, denying the violations.

Provisions for appeal by a bail bondsman whose license is revoked is made in § 11 of the Act as follows:

*"Court review*

"Sec. 11. An appeal may be taken from any board's order revoking, suspending, or refusing to issue a license. The appeal must be made within 30 days after written notice of the suspension, revocation, or refusal by filing a petition in a district court in the county in which the license is issued or refused. If no appeal is taken within 30 days after written notice of suspension, revocation, or refusal, such action shall become final. An appeal shall be by trial de novo, as in proceedings appealed from justice to county courts. The decision of the board shall have full force and effect pending the determination of the appeal. All appeals taken from actions of the board shall be against the board and not against the members individually."

In the district court the appellant took the position, as it does here, that insofar as the Act provides for the appeal to be de novo it is violative of § 1 of Article 2 of Vernon's Ann.Tex.Const. It refused to adduce proof on the non-jury hearing, contending the matter was a legislative one and that the review must be made under the substantial evidence rule. Judgment was accordingly rendered that the appellant "take nothing," leaving the appellee's license in force.

§ 1 of Article 2, Vernon's Ann.Tex.Const., provides as follows:

"The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The precise question for our decision, then, is whether the revocation of a bail bondsman license by a County Bail Bond Board involves the exercise of a judicial or legislative function. If the former, trial de

novo is proper on appeal; if the latter, review of the revocation must be made under the substantial evidence rule, and the provision in the statute for a de novo appeal is unconstitutional. *Gerst v. Nixon* (Tex. Sup., 1966) 411 S.W.2d 350. The appellant relies primarily on the decision in *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699 (1959). The appellee relies primarily on the case of *Key Western Life Ins. Co. v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839 (1961).

In *Key Western,* the State Board of Insurance affirmed an order of the Commissioner of Insurance disapproving a policy form submitted by Key Western. Under Article 3.42(f) of the Insurance Code, disapproval of a policy form was authorized "if, and only if, (1) It is in any respect in violation of or does not comply with this Code. (2) It contains provisions which encourage misrepresentation[s] or are unjust, unfair, inequitable, misleading, deceptive . . . ." Key Western appealed to the district court. The statutory standard of review was worded much like ours, providing it "shall not be limited to questions of law and the substantial evidence rule shall not apply, but such action shall be tried and determined upon a trial de novo to the same extent as now provided for in the case of an appeal from the Justice Court to the County Court." However, on the appeal the district court disregarded the statute and reviewed the matter under the substantial evidence test, over Key Western's objection. On a direct appeal to our Supreme Court, it was held that Key Western was entitled to a trial de novo in the district court. In the course of its decision, the Court examined various tests and definitions that have been employed by the Courts in determining whether a given function is legislative or judicial, including the following:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and its end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." *Prentis v. Atlantic Coast Line,* 211 U.S. 210, 29 S.Ct. 67, 69, 53 L.Ed. 150.

"It has been stated that the nature of the final act and the character of the process and operation, rather than the general character of the authority exercised, is determinative. The action of an administrative body or officer is adjudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule-making action, general and future in effect." 73 C.J.S. Public Administrative Bodies And Procedure § 8, p. 306.

The Court then reasoned that under the Insurance Code the Insurance Board was not to have broad legislative discretion; that it was empowered to disapprove a policy form for certain specific reasons only and not to dictate to the insurance companies the particular form to be used; that "its only duty is to determine whether the form of the policy submitted for its approval meets the standards prescribed by the statute"; and that its action " 'is particular and immediate, rather than, as in the case of legislative or rule-making action, general and future in effect.' "

In *Davis v. City of Lubbock,* our Supreme Court was concerned with the constitutionality of a section in the Urban Renewal Act which, like the Act before us, called for a de novo, judicial review of the City's designation of an area within its boundaries as a "slum or blighted area." The court noted that, by statute, the decision as to whether an area was a "slum" or "blighted" under the Urban Renewal Act turned on findings that the area is one "which is detrimental to the public health, safety, morals or welfare of the city" and is "a menace, in its present condition and use, to the public health, safety, morals or public welfare of the city"; based upon such evidentiary matters as "predominance of either residential or nonresidential buildings or improvements

which are in a state of dilapidation, deterioration, or obsolescence due to their age, or for other reasons"; "inadequate provisions . . . for open spaces"; "conducive to high population densities and overcrowding of population"; "conducive to the ill-health of the inhabitants of the area or to the transmission of disease, and to the incidence of abnormally high rates of infant mortality"; "conducive to abnormally high rates of crime and juvenile delinquency"; "results in a condition in that area which substantially retards or arrests the provisions of a sound and healthful housing environment"; "results in and constitutes an economic or social liability to the city"; etc. The court concluded that a decision by the City that a particular area is a "slum" or "blighted" under the statute is "political in nature, and involves questions of public policy" and is "thus made to rest upon a finding involving legislative discretion"; and held that the provision in the Act for a review by trial de novo was unconstitutional because it "would clearly involve the exercise by the courts of nonjudicial powers."

The grounds for, and the procedure for, the revocation of a license once granted under the Act in question are set forth in §§ 9 and 10 thereof, as follows:

> "*Refusal and revocation of licenses*
>
> "Sec. 9. (a) No license may be issued to any person who:
>
> (1) is bankrupt or insolvent; or
>
> (2) has had his license revoked for default upon a bond and has not satisfied the obligation of the bond.
>
> (b) Any license may be suspended or revoked by the board for:
>
> (1) violation of the provisions of this Act;
>
> (2) fraudulently obtaining a license under the provisions of this Act;
>
> (3) conviction under the laws of this or any other state or of the federal government of a misdemeanor involving moral turpitude or of a felony;
>
> (4) being adjudged bankrupt or becoming insolvent;
>
> (5) failing to pay within 30 days any final judgment rendered on any forfeited bond in any court of competent jurisdiction within this state;
>
> (6) failure to pay, in addition to the principal amount of a forfeited bond, all necessary and reasonable expenses incurred by all peace officers in arresting the principal on any bail bond executed by him, in the event the principal fails to appear as required by law;
>
> (7) a licensee's paying commission or dividing commissions or fees with any person, company, firm, or corporation not permitted hereunder to execute bonds or in any manner passing anything of value to any person for referrals of bond business; or
>
> (8) soliciting bail bond business in any building where prisoners are processed or confined.
>
> "*Procedure for suspension or revocation of license*
>
> "Sec. 10. (a) The board may revoke or suspend a license in accordance with the procedure provided in this section for the violation of any provision of this Act.
>
> (b) Notice of a hearing to suspend or revoke shall be given by certified mail addressed to the last known address of the licensee at least 10 days prior to a date set for the hearing.
>
> (c) The notice shall specify the charges of violation of this Act made against the licensee, and no other charges shall be made at the hearing pursuant to the notice.
>
> (d) The hearing shall afford to the licensee opportunity to be heard, to present witnesses in his behalf, and to question witnesses against him.
>
> (e) A record of the hearing shall be made. It shall be made available to the licensee on his request subject to his paying reasonable costs of transcription."

These statutes do not picture a discretionary venture by the County Bail

Bond Board, nor the exercise by it of a legislative rule-making power. Rather, they detail a proceeding and a purpose that are adjudicatory in character. The decision called for by these statutes has an immediate, specific impact on the particular parties involved, as opposed to the formulation of general, futuristic public policy. Clearly, the decision is judicial in nature. Its review, therefore, must be by trial de novo.

The appellant asserts that the provision in the Act that the decision of the Bail Bond Board "shall have full force and effect pending determination of the appeal" is in irreconcilable conflict with the provision therein for de novo appeal, if the latter is valid; and that both must therefore fall; citing *Southern Canal Co. v. State Board of Water Engineers,* 159 Tex. 227, 318 S.W.2d 619. The appellee asserts there is no conflict, citing *State Board of Medical Examiners v. Mann* (Tex.Sup., 1967) 413 S.W.2d 382.

In *Southern Canal,* the pertinent statute first called for a trial de novo as in an appeal from a Justice of the Peace Court to the County Court upon a preponderance of the evidence, and then called for the evidence to be judged "as to the reasonableness" of the Board's order "upon the facts found therein." The Court held that because the first part dictates that the Board's order be a nullity upon the filing of the appeal in the courts, and the second part requiring a review of the validity and reasonableness of the order "negatives any idea that the Board's order is vacated or nullified," the statute was inoperative and void.

In *Mann,* the statute provided for a Justice Court/County Court appeal de novo, but provided, also, that "the decision of the Board shall not be enjoined or stayed except on application . . ." The Court noticed its decision in *Southern Canal;* but recognizing its duty "to harmonize the inconsistent provisions, if possible, and thus give effect to both," the court held that "the language of the statute means that enforcement of the Board's order is not suspended *pending trial of the case* in District Court unless the court issues its injunction or stay order."

It is readily apparent that our statute is more akin to the statute in *Mann* than to the one in *Southern Canal,* and that it bears the construction placed on the *Mann* statute.

The appellant's points and contentions are overruled. The judgment is affirmed.